**In re HATHAWAY RANCH PARTNER-SHIP, a California Limited Partnership, Debtor.**

**Bankruptcy No. LA 90–09098–VZ.**

United States Bankruptcy Court, C.D. California.

June 26, 1990.

Joseph A. Eisenberg, Michael I. Gottfried, Levene & Eisenberg, Los Angeles, Cal., for debtor in possession.

Victor Sahn, Sulmeyer, Kupetz, Baumann & Rothman, P.C., Los Angeles, Cal., for creditor Ronald Simms.

MEMORANDUM OF DECISION RE APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY LEVENE & EISENBERG AS COUNSEL

VINCENT P. ZURZOLO, Bankruptcy Judge.

## I.

### INTRODUCTION

A. *The Debtors*

On April 13th, 1990 the debtor and debtor in possession in this Chapter 11 case,

Hathaway Ranch Partnership, a California Limited Partnership ("Hathaway"), commenced this bankruptcy case by filing its voluntary petition under Chapter 11. Hathaway's voluntary petition was executed by Carl Rheuban ("Rheuban"). Rheuban signed the petition as general partner of CRS Associates, a California Limited Partnership ("CRS"). CRS, in turn, is the general partner in Hathaway.

Rheuban filed on his behalf a voluntary petition under Chapter 11 on April 26th, 1990. On March 22, 1990 creditors of Pilgrim Mortgage Corporation ("Pilgrim") filed an involuntary petition for relief under Chapter 11. Pilgrim did not oppose the petition and an order for relief was entered on May 10, 1990. Rheuban owns 100% of the equity security interest in Pilgrim and is Pilgrim's president.

## B. *The Lawyers.*

Pilgrim's petitioning creditors brought a motion to appoint a trustee in the Pilgrim case. Levene & Eisenberg ("L & E") appeared on behalf of Pilgrim at that hearing. Joseph Eisenberg, a member of L & E who appeared at the hearing, stated that L & E was appearing on behalf of Pilgrim only at the hearing for the appointment of a trustee in Pilgrim's case. L & E stated that it did not intend to represent Pilgrim in its bankruptcy case as it was counsel to Rheuban. At the conclusion of the hearing, I appointed a trustee in Pilgrim's case.

Shortly after April 13th, 1990, Hathaway filed its "Application of Debtor and Debtor–in–Possession to Employ Bankruptcy Counsel" (the "First Application"). On May 2nd, 1990, Hathaway filed its "Revised Application of Debtor and Debtor In Possession to Employ Bankruptcy Counsel" ("the Revised Application"). In these applications, Hathaway seeks an order approving and authorizing the employment of L & E as Hathaway's bankruptcy counsel.

In the Revised Application, which was prepared by L & E, Hathaway disclosed that L & E had received $40,000 from CRS and the promise of an additional $10,000 (the "Hathaway Retainer") as an "earned in full upon receipt" retainer. Attached to the Revised Application is the employment agreement between Hathaway and L & E in the form of a letter dated April 16th, 1990 (the "Employment Agreement"). In § 3 of the Employment Agreement, Hathaway and L & E agree that the Retainer "shall be earned in full upon execution of this Agreement by virtue of L & E undertaking this employment and making itself available to represent CLIENT on this matter." Consistent with the Employment Agreement, Hathaway and L & E assert on page 3 of the Revised Application that the Hathaway Retainer is "nonrefundable". Yet apparently contrary to these provisions of the Employment Agreement and the Revised Application, Hathaway and L & E also represent in the Revised Application that L & E will give credit to Hathaway in the amount of the Hathaway Retainer for future legal services provided by L & E in Hathaway's bankruptcy case.

In the Revised Application Hathaway discloses that Rheuban filed his bankruptcy case on April 26th, 1990 and that L & E intends to represent Rheuban in his Chapter 11 bankruptcy case. Also in the Revised Application Hathaway reiterates the representation that Mr. Eisenberg made at the hearing on the appointment of a trustee in the Pilgrim case; i.e., that L & E appeared on behalf of Pilgrim only for the purposes of that hearing. Hathaway did not state in the Revised Application that L & E intended to represent Pilgrim as its bankruptcy counsel on an ongoing basis.

In addition to the above described disclosures, Hathaway and L & E asserted in the penultimate paragraph of the Revised Application that neither L & E nor any of the attorneys that make up L & E or are employed by it "has any connection with [Hathaway], its creditors, or any other party in interest in this case, or their respective attorneys or accountants." In the "Declaration of Proposed Attorney ..." (the "Eisenberg Declaration") that accompanied the Revised Application, Mr. Eisenberg stated under penalty of perjury that "if, at any subsequent time during the course of this proceeding, [L & E] learns of any such connection, an amended declara-

tion identifying and specifying such involvement will be filed promptly with the court and the Office of the United States Trustee."

After reviewing the Revised Application, I signed and issued an "Order on Revised Application to Employ Counsel for Debtor in Possession" (the "Revised Application Order"). The Revised Application Order was entered on May 9th, 1990. In the Revised Application Order I directed Hathaway and L & E to give notice to all creditors of the Hathaway estate of a hearing on the Revised Application.[1] In the Revised Order I also directed Hathaway and L & E to submit evidence regarding the source of the Hathaway Retainer and whether the creditors of Hathaway were identical to the creditors of Rheuban.

## C. *The Hearing on the Revised Application*

Prior to the hearing on the Revised Application that I set for May 31st, 1990, Hathaway filed the "Declaration of Carl M. Rheuban in support of [the Revised Application]" (the "Rheuban Declaration"). The Rheuban Declaration was filed on May 21st, 1990. It was not served on all creditors of the estate with the notice of the May 31st, 1990 hearing. The notice of the hearing was served on May 11th, 1990. Hathaway had no explanation for the delay in the filing and service of the Rheuban Declaration.

In the Rheuban Declaration, Hathaway and L & E disclosed for the first time the following:

(a) On February 20th, 1990, Rheuban transferred a house located at 312 Texas Street, San Francisco, California (the "Rheuban House") to L & E as a retainer. In the Rheuban Declaration, Rheuban estimates that the fair market value of the Rheuban house is approximately $400,000;

(b) Rheuban transferred the Rheuban House to L & E for "fees and costs incurred or to be incurred by L & E in connection with Chapter 11 or Chapter 7 cases to be filed by or against Hathaway, Pilgrim Mortgage, me and certain other related entities including Conventional Mortgage, Credit America and the Atrium. Since I have owned [the Rheuban House] no other person or entity has had or claimed to have any ownership interest in [the Rheuban House] other than a community property interest of my wife. L & E and I agreed that the entire retainer described above was earned on receipt and that no portion of the retainer was refundable";

(c) Rheuban agreed with L & E to "allocate" $25,000 of the value of the Rheuban House (the "Pilgrim Retainer") "for fees and costs incurred or to be incurred by L & E in connection with the Pilgrim Mortgage case." Rheuban agreed with L & E that the Pilgrim Retainer was "earned on receipt" and nonrefundable;

(d) On April 13th, 1990, the day that the Hathaway case was commenced, L & E transferred the Rheuban House to the law firm of O'Neill & Lysaght (the "O'Neill Firm"). The O'Neill Firm represents Rheuban with respect to criminal matters. In exchange for the Rheuban House, L & E received $400,000 in cash.[2] Rheuban further declares that he and L & E agreed to allocate $10,000 of the cash received by L & E from the O'Neill Firm for fees and

---

1. In the ordinary course, applications for orders approving employment of professionals by a trustee or a debtor in possession are first submitted to the United States Trustee for review and comment. The United States Trustee then files it with the court for the court's review. Notice is not usually given to any party of these applications unless the court requires notice on its own motion or the United States Trustee requests it. *See,* Local Bankruptcy Rules 111(7)(d) and 141(2)(b).

2. After the Revised Application hearing, I learned from a declaration of Bryan O'Neill, a member of the O'Neill Firm, that the O'Neill Firm obtained the $400,000 paid to L & E for the Rheuban House from Rheuban's liquidation of his stock in Pilgrim. I also learned that Rheuban has transferred over seven hundred thousand dollars in cash to the O'Neill Firm as well as his personal partnership interest in three real estate limited partnerships. I have ordered the O'Neill Firm to show cause why all property and funds transferred to it from Rheuban should not be disgorged pursuant to 11 U.S.C. § 329.

costs to be incurred by L & E in the Hathaway case;

(e) Also on April 13th, 1990, Rheuban and his wife transferred $15,000 to CRS from their personal funds. Rheuban declared that he considered the transfer of funds to CRS and the allocation of $10,000 to L & E to be "capital contributions" to CRS. Simultaneously Ronald A. Simms, a former general and current limited partner in CRS, contributed $25,000 of capital to CRS; and

(f) Rheuban declares that Mr. Eisenberg has explained to him the definition of "claim" and that he is not aware of any claims that he or Chapter 11 estate would have against Hathaway. Rheuban also avers that he understands that he is liable for all of the claims against CRS, as general partner in CRS, and in turn, liable for all claims against Hathaway.

On the day of the hearing on the Revised Application, Simms appeared through counsel and attempted to file with my courtroom deputy and serve on L & E a written objection to the Revised Application. Hathaway moved to strike the written opposition of Simms because it was tardy. Hathaway also moved to bar Simms from appearing in opposition to the Revised Application because Simms, as a limited partner in CRS, was not a party in interest within the meaning of 11 U.S.C. § 1109(b).

### D. *The Judge*

At the hearing on the Revised Application, Mr. Eisenberg asserted that Simms was represented by Greenberg, Glusker, Fields, Claman & Machtinger (the "Greenberg" Firm), my former employer and my wife's current employer.[3] Counsel for Simms confirmed that the Greenberg Firm had represented and was representing Simms in some capacity but was not representing Simms in this bankruptcy case. Mr. Eisenberg stated that he raised Simms' connection to the Greenberg Firm for the benefit of the court.

I asked Mr. Eisenberg if Hathaway was asserting that I should disqualify myself. Mr. Eisenberg stated that Hathaway did not request my disqualification nor see any grounds for it.

### II.

### PRELIMINARY ISSUES

Before I discuss the adequacy of Hathaway's and L & E's disclosure of facts relevant to the employment of L & E as counsel to Hathaway, L & E's intention to represent Hathaway, Rheuban and Pilgrim simultaneously, and the source and nature of the Hathaway Retainer, I must address two preliminary issues raised by Hathaway at the Revised Application hearing.

### A. *Simms' Right to be Heard*

■ Hathaway objected to Simms' attempt to file a written memorandum of points and authorities in opposition to the Revised Application on the day of the hearing on the Revised Application. Hathaway served Simms with notice of the Revised Application hearing on May 11th, 1990. Simms had ample opportunity to file and serve written opposition to the Revised Application earlier than the date of the hearing. For this reason I granted Hathaway's motion to strike Simms' written opposition.

Hathaway also asserted that Simms had no right to be heard at the Revised Application hearing because he was not a party in interest as defined by § 1109(b), which provides:

"A party in interest, including the debtor, the trustee, a creditor's committee, an equity security holder's committee, a

---

**3.** Before serving as a bankruptcy judge for the Central District of California, I was an associate in the bankruptcy department of the Greenberg Firm from 1982 through my appointment to the bench. The Greenberg Firm is comprised of over eighty attorneys. My wife is a salaried associate with the Greenberg Firm who does not share in the profits of the Greenberg Firm and who specializes in real estate transactional work. I also see certain Greenberg Firm attorneys on a social basis. Because of these connections with the Greenberg Firm, it is my openly stated policy to disqualify myself from any bankruptcy case, adversary proceeding or contested matter in which the Greenberg Firm represents any party in order to avoid any possible appearance of impropriety.

creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

Hathaway's argument is simple—as Simms is not any of the entities described in the above quoted provision, Simms is not a party in interest.

11 U.S.C. § 102(3) provides that the words "includes" and "including" are not limiting and subsection (5) of that statute provides that the word "or" is not exclusive. This means that the entities listed in § 1109(b) are not the only parties in interest who may appear and be heard on any issue in a case under Chapter 11.

■■■ As a limited partner in CRS, Simms has a financial interest in the bankruptcy estate of Hathaway. In matters that concern the administration of the entire bankruptcy case, as compared to a particular adversary proceeding which concerns the dispute between certain parties, I conclude that § 1109(b) should be construed expansively to allow any party that can demonstrate it has an interest in the bankruptcy case to appear and be heard. The standard is very different when a party wishes to be heard in an adversary proceeding. *See, e.g., Fuel Oil Supply & Terminaling v. Gulf Oil Corporation,* 762 F.2d 1283 (5th Cir.1985).

I therefore allowed Simms to appear and be heard at the Revised Application hearing. I restricted Simms' participation to oral argument based upon evidence submitted by Hathaway and applicable law.

### B. *Disqualification of the Court*

■■■ Although Hathaway does not seek my disqualification, it is necessary to address this issue as it has been raised by L & E in this bankruptcy case and in the related bankruptcy case of Pilgrim and because I have an independent duty to determine whether there is cause to disqualify myself even if no party requests that determination. *State of Idaho v. Freeman,* 507 F.Supp. 706, 720 (D.Idaho · 1981).

There are two statutes that address disqualification of federal judges. These are 28 U.S.C. §§ 144 and 455. · Section 144 is invoked when a party to a proceeding files a timely and sufficient affidavit regarding personal bias or prejudice of the judge. No such affidavit has been filed.

In § 455 [4] Congress describes several situations in which a judge of the United

---

4. 28 U.S.C. § 455 Disqualification of Justice, Judge, or Magistrate

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person;

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

States must disqualify himself or herself. Bankruptcy Rule 5004(a) provides that § 455 applies to bankruptcy judges.

I will discuss those specific portions of § 455 that arguably apply to this matter.

### (1) Bias or the Appearance of Bias

Section 455(a) requires a judge of the United States to disqualify himself or herself in any proceeding in which his impartiality can be reasonably questioned. The use of the adverb "reasonably" indicates that a judge should employ an objective standard in determining whether he or she can act impartially in resolving disputes in the proceeding before him or her. *United States v. Winston*, 613 F.2d 221, 223 (9th Cir.1980). In determining whether my impartiality might reasonably be questioned, I am required to inform myself about my personal and fiduciary financial interests and the personal and financial interests of my spouse and children. 11 U.S.C. § 455(c). I must also disqualify myself if it is necessary to avoid the appearance of impropriety, even if no impropriety or bias exists. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 2202, 100 L.Ed.2d 855 (1988).

The Greenberg Firm is not representing Simms or any related entity in this bankruptcy case. During my association with the Greenberg Firm, I performed no services for Simms or any entity related to Simms on any matter. My wife has worked for Simms on only one unrelated matter. Apart from the connections disclosed in this opinion, I am not aware of any connection to the Greenberg Firm or to Simms.

In view of the nature of my spouse's and my connections with the Greenberg Firm and Simms or any entity related to Simms, I find that my impartiality in presiding over this bankruptcy case would not be questioned by a reasonable person. I also find that these connections do not give rise to any appearance of impropriety.

### (2) *Personal Bias or Knowledge*

28 U.S.C. § 455(b)(1) requires my disqualification if I have a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts. I have no such bias or prejudice for or against any party in this bankruptcy case and have no personal knowledge of any disputed facts.

### (3) *Prior Relationship as a Lawyer*

28 U.S.C. § 455(b)(2) requires my disqualification if: (1) I served as a lawyer in this bankruptcy case; (2) a lawyer with whom I previously practiced served in this matter, while we were associated, or (3) either a

---

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

    (i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

    (ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

    (iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

    (iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, or magistrate to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

lawyer I associated with or I could be a material witness in this case.

I did not participate in any of the matters before me in the Hathaway case nor any matters which arose prior to the filing of the Hathaway case that are connected to Hathaway, CRS, Pilgrim, or Rheuban, when I practiced as an attorney at the Greenberg Firm. Nor am I aware that any lawyer at the Greenberg Firm served as a lawyer for Simms or any other party regarding these matters while I was associated with the Greenberg Firm. Nor am I aware that I or any Greenberg Firm attorney would be a material witness concerning matters arising out of this bankruptcy case or related cases.

#### (4) *Financial Interest*

28 U.S.C. § 455(b)(4) requires my disqualification if my spouse, my children or I have a financial interest in the subject matter in controversy or a party to this case. I also must disqualify myself if my spouse, my children or I have any other interest that could be substantially affected by the outcome of this case. "Financial Interest" is defined in 28 U.S.C. § 455(d)(4) as *"ownership of a legal or equitable interest ... or a relationship as director, advisor or other active participant in the affairs of a party."* (Emphasis added.) Neither my spouse, my children nor I have any such financial or other interest in the subject matter of the bankruptcy case or related cases or in any party in this case or related cases. Nor do we have any interest that could be substantially affected by these cases.

#### (5) *Relatives*

28 U.S.C. § 455(b)(5) requires my disqualification if my spouse is, a relative within the third degree of relationship to my spouse or to me is, or I am a party to this case, an officer, director or a trustee of a party to this case, a lawyer in this case, a holder of an interest that could substantially be affected by the outcome of this case, or likely to be a material witness in this case.

While the Greenberg Firm acts as counsel to Simms in some capacity, it is not counsel to Simms in this bankruptcy case. Even if the Greenberg Firm were acting as counsel to Simms in this bankruptcy case it is unlikely that my spouse would be involved in the representation of Simms. Further, my spouse's compensation is not dependent upon the outcome of this case.

For my disqualification to be mandatory under 28 U.S.C. § 455(b)(5):

(1) my wife or a relative within the third degree of relationship to me or to my wife would have to be the attorney representing a party in this bankruptcy case. It is not sufficient if she represented a party in an unrelated matter or was affiliated with the law firm involved in the case. *See, Diversifoods, Inc. v. Diversifoods, Inc.* 595 F.Supp. 133 (D.Ill.1984) (disqualification is not required when firm in which judge was former partner and judge's spouse is current partner represented party in matters other than pending litigation); *Reilly by Reilly v. Southeastern Pa. Transp.*, 330 Pa.Super. 420, 479 A.2d 973, 981 (1984). (Disqualification not required where judge's relative's firm is representing party in case but relative is not lawyer in case); or

(2) my wife's compensation would need to be dependent upon the outcome of this case or its effect upon Simms. Advisory Committee on Judicial Activities Advisory Opinion No. 58, *Code of Judicial Conduct for United States Judges.*

It has been my openly stated policy to disqualify myself from any bankruptcy case, adversary proceeding or contested matter, as may be appropriate, in which the Greenberg Firm is representing a party in the case, proceeding, or matter. I do so out of an abundance of caution and to avoid the possible appearance of impropriety. On the other hand, I conclude it is inappropriate for me or any judge to disqualify himself or herself "automatically" upon the mere request for disqualification or suggestion that it might be appropriate. Such a hair trigger response to disqualification issues would lead to the undesirable result of encouraging judge shopping by

parties. *See, e.g., State of Idaho v. Freeman,* 507 F.Supp. at 733.

Based upon the foregoing, I find that disqualification is not necessary or appropriate in this case. If any party in this case or any related case, however, is aware of any basis under 28 U.S.C. §§ 144 and 455 or the Code of Conduct for United States Judges for my disqualification, I invite that party to come forward and present such evidence to me for consideration.

## III

### THE HATHAWAY RETAINER

#### A. *Earned Upon Receipt Retainer or Advance Fee Payment*

Hathaway and L & E claim that they have agreed that the Hathaway Retainer is nonrefundable and was earned in full upon receipt by L & E. L & E argues that its promise to represent only Hathaway and no other party in this bankruptcy case is adequate consideration of the transfer of $50,000. L & E supports this assertion by arguing that once it represents a debtor in possession in a bankruptcy case, it will not abandon a client, whether or not the case goes well or if L & E ends up providing services of greater value than the compensation paid to it.

It should be noted, however, that L & E has not accepted the Hathaway Retainer as complete compensation for all services to be rendered in this bankruptcy case. Hathaway and L & E have agreed in the Employment Agreement that L & E may seek additional compensation if L & E provides services worth more than $50,000. Further, L & E and Hathaway have agreed in the Employment Agreement that L & E could withdraw from representation of Hathaway under certain circumstances.

If the Hathaway Retainer was truly earned upon receipt by L & E then L & E would be entitled to compensation in addition to the Hathaway Retainer for all services rendered on behalf of Hathaway after receipt of the Hathaway Retainer. This is not the case, however. L & E has agreed and represented to this court that the Hathaway Retainer compensates L & E not only for agreeing to represent Hathaway in this bankruptcy case but also for providing the first $50,000 of services to Hathaway. If this is not legal fiction, it is sophistry.

■ A true earned upon receipt retainer is one paid to a lawyer for which the only consideration exchanged is the promise to represent the client and no other party in the particular matter. The consideration cannot include logically the provision of future services if the retainer is truly earned upon receipt. *In re C & P Auto Transport, Inc.,* 94 B.R. 682, 687 (Bankr.E. D.Cal.1988). I find there is little or no value in a professional's mere promise to represent a debtor in possession and no other party in a bankruptcy case. The value of such a promise is negligible, absent extraordinary circumstances. The true value provided by the professional is the provision of actual, necessary and effective services.

This disparity in the value of consideration becomes glaring when the purported earned upon receipt retainer is as large as the Hathaway Retainer. No matter how experienced and skilled L & E is, I cannot believe that L & E's commitment to represent Hathaway and no other party in this bankruptcy case, as well as giving up the opportunity to represent other clients in other matters, is worth $50,000.

Further, this absence of an exchange of reasonably equivalent value gives rise to a claim for fraudulent transfer pursuant to 11 U.S.C. §§ 548 and 544. This would be a claim owned and asserted by a bankruptcy estate against its own lawyer. The existence of such a claim means counsel for a debtor in possession is not a "disinterested person" and that said counsel would hold an interest adverse to that of the bankruptcy estate. 11 U.S.C. §§ 327(a) and 101(13)(E). Thus any lawyer who accepted a true earned upon receipt retainer would be disqualified from representing a debtor in possession.

Based upon the foregoing, I find and conclude that the Hathaway Retainer is not a true earned upon receipt retainer. The

question, then, is why Hathaway and L & E describe it as one. There are two possible answers: (1) it is a means for L & E to draw upon Hathaway Retainer without prior review and approval of L & E's services and a determination of the reasonableness of the compensation for said services; and (2) it provides Hathaway, or actually Rheuban, a device for shielding assets from the reach of creditors. Neither purpose is appropriate.

## B. *Treatment of Advance Fee Payments in Bankruptcy*

■ L & E concedes that this court has the authority to review and approve the Employment Agreement and the disposition of the Hathaway Retainer. Congress created this authority in 11 U.S.C. §§ 327, 328, 329(b), 330, and 331. An excellent analysis of the interplay of these provisions of the Bankruptcy Code and their combined effect when the court is presented with a purported earned upon receipt retainer is found *In re C & P Auto Transport, Inc.,* 94 B.R. at 684–689.

It has been argued by a commentator that fee payments similar to the Hathaway Retainer, i.e., those described as earned upon receipt yet are applied by professionals as credits against future services, are recognized as appropriate under California law. Kraus, *Treatment of Prepetition Retainers,* 17 California Bankruptcy Journal, 153, 159–160 (1989). This commentator goes on to argue that if counsel for debtors in possession are not allowed to treat such retainers as their own property, rather than depositing the retainers in client trust fund accounts and drawing upon them only after court review and approval, then bankruptcy attorneys will not be treated the same as non-bankruptcy attorneys and this unequal treatment would violate a fundamental policy underlying 11 U.S.C. §§ 330 and 331. *Id.*

First, I conclude that it is not settled under California law that advance fee payments similar to the Hathaway Retainer are not required to be kept in trust fund accounts under California law. *In re C & P Auto Transport, Inc.,* 94 B.R. at 691.

Second, Hathaway and L & E presented no evidence that retainers like the Hathaway Retainer are commonly obtained by non-bankruptcy practitioners in the Southern California legal community and are treated as L & E has treated the Hathaway Retainer—depositing the retainer in its own account rather than in a client trust fund account. Finally, Congress has specifically mandated in 11 U.S.C. §§ 330 and 331 that compensation is to be paid to a professional person employed by a debtor in possession *only after notice and a hearing.* This specific requirement of prior review and approval of compensation must be given equal weight with if not greater weight than the directive in § 330 that the determination of compensation of bankruptcy professionals be made upon the consideration of the "cost of comparable services other than in a case under this title."

It may be argued that when a bankruptcy court grants an application for an order approving the employment of a professional and that application discloses the receipt of an advance fee payment that such approval satisfies the requirements of 11 U.S.C. §§ 330 and 331. This argument fails in every respect. As noted above, applications for approval of employment are nearly always considered without notice to all creditors and parties in interest and also without a hearing or an opportunity to request a hearing. Such notice and at least an opportunity for a hearing is required by 11 U.S.C. §§ 330 and 331.

Second, any order allowing and authorizing compensation under §§ 330 and 331 requires the prior submission by the professional of evidence supporting a finding by the court that the compensation sought is reasonable and is for *actual* and necessary services. I submit that it is impossible for a court to make such a determination a *priori.*

Third, advance fee payments, no matter how described, are property of the bankruptcy estate and not of the professional. The debtor in possession, as fiduciary to the bankruptcy estate, must maintain and account for all property of the estate to its creditors and to this court. It is impossible

for the debtor in possession to do so if its attorney has deposited an advance fee payment in its operating account and treats the funds as the professional's own money.

Finally, it is always possible that an advance fee payment may be too large for the reasonable compensation of the actual and necessary services that the professional provides to the bankruptcy estate. In such instances, any remaining portion of an advance fee payment should be immediately turned over to the estate for appropriate disposition.

It has been my unfortunate experience while serving as a judge in this court that many Chapter 11 cases are converted to cases under Chapter 7 and it is discovered too late that counsel for debtors in possession have received purported earned upon receipt retainers and yet have never submitted applications for approval of their employment or compensation nor have provided services to the bankruptcy estate commensurate with the value of the advance fee payment. It is then necessary for this court to issue orders requiring such counsel to show cause why such advance payments should not be disgorged pursuant to 11 U.S.C. § 329.

This kind of remedial action will be avoided if advance fee payments are maintained in client trust fund accounts by counsel for debtors in possession and not drawn upon until the court allows and approves compensation to that professional. It is my firm belief that most counsel will be extremely reluctant to withdraw funds from a client trust fund account without an order of this court in contrast to the current state of practice in which counsel for debtors in possession routinely treat advance fee payments as their own money before they have provided any services to the bankruptcy estate.

Based on the foregoing, I find and conclude that the Hathaway Retainer, and similar advance fee payments, must be maintained in client trust fund accounts and not be drawn upon until the professional obtains an order allowing and authorizing payment of compensation under 11 U.S.C. §§ 330 and 331.

It may be argued that my ruling imposes a significant burden on lawyers and other professionals who would represent debtors in possession in my court. This is because such professionals are prohibited from seeking approval of compensation more frequently than every 120 days pursuant to 11 U.S.C. § 331, absent a showing of cause. Such a result, the argument goes, would mean that bankruptcy practitioners are not being treated equally with non-bankruptcy practitioners who can draw upon advance fee payments more often than every four months.

There is a significant flaw in the assumption that underlies this argument, i.e., that non-bankruptcy practitioners are regularly paid in full on a monthly basis. If I were presented with admissable and persuasive evidence of that assumption, I would be quite surprised. I surmise that most non-bankruptcy lawyers would also be surprised.

11 U.S.C. § 331 allows professionals to request court review and approval of compensation more often than every 120 days if cause is shown. It is my policy to allow professionals to seek review and approval of compensation drawn from advance fee payments maintained in client trust fund accounts on a monthly basis pursuant to the notice and opportunity for hearing procedure of Local Bankruptcy Rule 111(7) if cause is shown and that request is made in the initial application for approval of employment. This policy prevents the imposition of any unfair burden upon bankruptcy practitioners and satisfies the requirements of taking into consideration the cost of comparable non-bankruptcy services in awarding compensation under 11 U.S.C. §§ 330 and 331.

C. *Source of Advance Fee Payments*

In this case $40,000 of the Hathaway Retainer flowed to Hathaway from CRS pursuant to capital contributions from Rheuban and Simms. The remaining $10,-000 was paid directly by Rheuban. Thus the Hathaway Retainer was paid not by Hathaway but by third parties, CRS and Rheuban.

Thus it may be argued that the transfer of the Hathaway Retainer does not create a claim for fraudulent transfer between Hathaway and L & E, property of Hathaway's estate would not be inappropriately treated as property of L & E, and there would be no reason for this court to interfere with the contractual arrangements between L & E and the CRS or concerning the nature of the transfer; i.e., whether the transfer is an earned upon receipt retainer or an advance fee payment. I disagree for the following reasons.

11 U.S.C. § 328(a) provides that:

> *"the* trustee [or *debtor in possession* pursuant § 1107(a) ] ..., *with the court's approval, may employ* or authorize the employment of *a professional person under § 327* ... of this title, as the case may be, *on any reasonable terms and conditions of employment ..."* (Emphasis added.)

This statutory language makes it clear that any agreement or arrangement concerning the employment or compensation of a professional by a debtor in possession is subject to this court's review and approval and that such arrangement or agreement must be reasonable. This conclusion is supported and emphasized by Bankruptcy Rule 2014's requirement that professionals seeking approval of their employment by the bankruptcy estate disclose *"any* proposed arrangement for compensation" and *"all* of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountant." It is the burden of the party seeking approval of the employment of the professional to establish that the arrangement or agreement pertaining to the employment or compensation of the professional is reasonable. *In re C & P Auto Transport, Inc.,* 94 B.R. at 686.

Third parties do not transfer property or funds to an attorney to represent a debtor in possession unless that representation is in the best interest of the third party. It is often the case that the interests of the third party are not identical to the interests of the debtor in possession in its role as fiduciary of the bankruptcy es-

tate. Thus by accepting payment from a third party, the proposed counsel for the debtor in possession necessarily has a conflict of interest in that counsel is serving two masters—the one who paid counsel and the one counsel is paid to represent. I find that this is an actual conflict of interest that disqualifies a professional from being employed pursuant to 11 U.S.C. § 327 absent a showing that the interests of the third party and the bankruptcy estate are identical upon notice to all creditors, equity security holders and other parties in interest.

Hathaway and L & E have made no such showing.

## IV.

### FAILURE TO DISCLOSE

Bankruptcy Rule 2014 imposes the following requirement on all professionals who wish to be employed by a debtor in possession:

> "The application [for an order approving employment of the professional] shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants."

All facts that *may* be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate must be disclosed. *In re Haldeman Pipe & Supply Co.* 417 F.2d 1302, 1304 (9th Cir.1969); *In re B.E.S. Concrete Products, Inc.,* 93 B.R. 228, 236 (Bankr.E.D.Cal.1988); *In re Lee,* 94 B.R. 172, 176 (Bankr.C.D.Cal.1988). The disclosure must be made in the application for order approving employment. "It is not sufficient that the information might be mined from petitions, schedules, § 341 meeting testimony, or other sources." *In re B.E.S. Concrete Products, Inc.,* 93 B.R. at 236 citing *In re Haldeman Pipe & Supply Co.,* 417 F.2d at 1304 and other cases. A negligent failure to disclose all facts required by Bankruptcy Rule 2014(a) does not relieve the professional of the conse-

quences of failing to make a complete disclosure. *In re Rogers—Pyatt Shellac Co.*, 51 F.2d 988, 992 (2d Cir.1931); *In re Michigan General Corp.*, 78 B.R. 479, 482 (Bankr.N.D.Tex.1987); *In re B.E.S. Concrete Products, Inc.*, 93 B.R. at 237.

■ Failure to make the disclosure required by Bankruptcy Rule 2014 may result in disqualification of counsel in the instant case and any related case. *In re Lee*, 94 B.R. at 177. If the lack of disclosure is discovered after employment is approved it may also result in denial and disgorgement of compensation. *In re Haldeman & Supply Co.*, 417 F.2d at 1305; *In re B.E.S. Concrete Products, Inc.*, 93 B.R. at 237 and cases cited therein.

■ There are many significant facts that pertain to L & E's connections with Rheuban, Pilgrim, and the O'Neill Firm which were not disclosed in the First Application or the Revised Application. These facts are set forth in § I, C above. It is true that these facts were disclosed to the court in the Rheuban Declaration prior to the hearing on the Revised Application. L & E could not explain, however, why these facts were not disclosed initially to the court and why they were disclosed when they were.

The facts disclosed in the Rheuban Declaration and not disclosed in the First Application or the Revised Application are pertinent to my determination of whether L & E's employment by Hathaway can be approved. L & E argued at the Revised Application hearing that its failure to disclose was inadvertent. It is hard to believe that L & E, a firm comprised of experienced and skillful bankruptcy practitioners, did not recognize that the facts described in § I, C above should have been disclosed to me in the First Application or the Revised Application.

Hathaway and L & E's attempt to meet the disclosure requirements of Bankruptcy Rule 2014(a) was inadequate. I now turn to the issue whether L & E holds or represents an interest adverse to Hathaway's bankruptcy estate sufficient to disqualify it from representing Hathaway.

## V.

## CONFLICTS OF INTEREST

11 U.S.C. § 327(a) and § 1107(a) authorizes a debtor in possession to employ an attorney that is disinterested and does not hold or represent an interest adverse to the bankruptcy estate. "Disinterested person" is defined in 11 U.S.C. § 101(13). That statute provides in pertinent part as follows:

"disinterested person" means a person that—

"(E) does not have an interest materially adverse to the *interest of the estate* or of any class of creditors or equity security holders, by *reason of any direct or indirect relationship to, connection with, or interest in, the debtor* or an investment banker specified in subparagraph (B) or (C) of this paragraph, *or for any other reasons;*" (Emphasis added.)

This aspect of disinterestedness is essentially identical to the requirement set forth in § 327(a) that an attorney seeking employment by a debtor in possession must not hold or represent an interest adverse to the estate. *In re Peck*, 112 B.R. 485, 491 (Bankr.D.Conn.1990).

■ I find that L & E represents and holds an interest that is materially adverse to the interest of Hathaway's bankruptcy estate. This is because Rheuban, pursuant to the advice of L & E, transferred the Rheuban House to L & E and then, with the agreement of L & E, allocated portions of the Rheuban Retainer (which was obtained by L & E through "the sale" of the Rheuban House to the O'Neill Firm) to related entities of Rheuban, including Hathaway, as advance fee payments to L & E and possibly other attorneys to represent these related entities in bankruptcy cases. This complicated series of transactions boils down to Rheuban transferring funds to or for Hathaway's benefit for no apparent consideration. This gives rise to a claim for fraudulent transfer under 11 U.S.C. §§ 548 and 544 that belongs to Rheuban's estate and that could be asserted against Hathaway and other entities related to Rheuban.

As L & E also represents Rheuban and seeks approval of its employment as counsel for Rheuban's bankruptcy estate, L & E seeks to represent the bankruptcy estate holding a fraudulent transfer claim and the bankruptcy estate that is the recipient of the possible fraudulent transfer.

L & E's position is not bolstered by the fact that all of Hathaway's creditors have claims against Rheuban's bankruptcy estate. There are creditors of Rheuban's bankruptcy estate that do not have claims against Hathaway's bankruptcy estate. It may be in the best interest of those creditors for Rheuban's bankruptcy estate to pursue all claims belonging to the Rheuban bankruptcy estate, including claims against Hathaway's bankruptcy estate. L & E proposes to represent both bankruptcy estates and thus faces an actual conflict of interest that disqualifies it from any such dual representation.

There are other conflicts of interest which make dual representation inappropriate. The primary assets of Hathaway's bankruptcy estate are its rights in several real estate purchase agreements. L & E asserted at the Revised Application hearing that Rheuban's reorganization hinged upon the success of Hathaway's bankruptcy estate consummating the real estate purchase agreements. There is a strong probability that if Hathaway is successful in exploiting these contracts that a conflict may arise between Rheuban's and Hathaway's bankruptcy estates as to the distribution of the proceeds. This probability is enhanced by the interposition of CRS, an entity controlled by Rheuban, between Hathaway and Rheuban.

Further, the Hathaway Retainer was apparently paid to L & E by CRS, after capital contributions were made to CRS by Simms and Rheuban and directly by Rheuban. As L & E has failed to show that the interest of CRS, Rheuban and Hathaway are identical, I find that L & E is in an actual conflict of interest between Hathaway and CRS and Rheuban. See, § III, B above.

My finding that L & E represents an interest that is actually adverse to the Hathaway estate is also supported by the fact that L & E participated in the allocation of the Rheuban Retainer to Hathaway and other entities related to Rheuban. Putting aside the propriety of the transfer of the Rheuban House to L & E and its subsequent sale to the O'Neill Firm, it is arguable that Hathaway required a much larger capital contribution than Rheuban made to it through CRS. Independent counsel may have argued for a larger capital contribution, perhaps to be used for other purposes besides advance fee payments for attorneys. As counsel for Rheuban and Hathaway, L & E is placed in the position of negotiating for both sides.

Because of the existence of actual conflicts of interest, I need not discuss the issue which L & E spent the majority of its time debating at the Revised Application hearing, i.e., whether dual representation of a general partner and a limited partner when one is a debtor in possession is *per se* prohibited under 11 U.S.C. § 327. *See, In re McKinney Ranch Associates*, 62 B.R. 249 (Bankr.C.D.Cal.1986); *In re Downtown Investment Club III*, 89 B.R. 59 (B.A.P. 1988).

## VI.

## CONCLUSION

The Hathaway Retainer is an advance fee payment that must be maintained in a client trust fund account and not be drawn upon without prior court approval. L & E failed to make complete disclosure as required by Bankruptcy Rule 2014(a). Further, L & E is not a disinterested person and holds an interest that is adverse to Hathaway's bankruptcy estate. I therefore find and conclude that L & E is disqualified from representing Hathaway and must immediately deposit the Hathaway Retainer or an amount equal to it in a client trust fund account pending a request for refund by the fiduciary of Hathaway's bankruptcy estate. Based upon the foregoing, the Revised Application is denied.