**In re MARINE OUTLET, INC., Debtor.**

**Bankruptcy No. 89–8648–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 19, 1991.

Richard C. Prosser, Tampa, Fla., for debtor.

Raymond C. Farfante, Jr., Tampa, Fla., for Barnett Bank.

Edward M. Waller, Tampa, Fla., for Wayne B. and Sandra A. Titus.

ORDER ON MOTION FOR REHEARING AND RECONSIDERATION OR TO ALTER OR AMEND ORDER ON AMENDED APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES BY FOWLER, WHITE, GILLEN, BOGGS, VILLAREAL & BANKER, P.A.

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a confirmed Chapter 11 case and the matter under consideration is a Motion

for Rehearing and Reconsideration or to Alter or Amend Order on Amended Application for Allowance of Administrative Expenses filed by the law firm of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A. (Law Firm). The Motion is directed to an order previously entered by this Court on June 27, 1991, which disapproved in toto a fee application filed by the Law Firm, which sought a fee award for its services rendered as special counsel to the estate of Marine Outlet, Inc. (Debtor). The facts relevant to the matter under consideration are without dispute and are as follows:

On March 28, 1990, the Debtor filed an Application and sought authorization to retain the Law Firm to represent the estate as special counsel in a lawsuit filed against Barnett Bank of Sarasota (Barnett). This lawsuit was originally filed by Barnett against the Debtor and its principals, Mr. and Mrs. Titus, and sought a deficiency judgment against the defendants. The claim of Barnett against Mr. and Mrs. Titus was based on a personal guaranty by Mr. Titus of the corporate obligation of the Debtor owed to Barnett, which obligation was secured by collateral on which Barnett sought to foreclose its lien. It appears that the Law Firm was already representing Mr. Titus at the time the Application to retain the Law Firm was filed by the Debtor. Mr. Titus was and still is the president and majority stockholder of the Debtor, but also claimed to be one of the largest creditors of the Debtor, and in fact filed an unsecured Proof of Claim in this Chapter 11 case in the amount of $550,000.00.

■ In accordance with Bankruptcy Rule 2014(a), the Application to Retain the Law Firm was accompanied by an Affidavit filed under penalty of perjury stating that the Law Firm "represents no interest antagonistic to that of the Debtor ... and is qualified to serve as attorney for Debtor–In–Possession." The verified statement provided by the Law Firm did not comport with the requirements of Bankruptcy Rule 2014(a) in that it failed to disclose, as noted earlier, that the Law Firm, whose interest was clearly adverse to the interest of other creditors of the estate, was already repre-senting Mr. and Mrs. Titus in the suit filed by Barnett. It should be noted that Bankruptcy Rule 2014(a) also requires that the verified statement accompanying an application to employ set forth "the person's connections with the Debtor, creditors, or any other party in interest, their respective attorneys and accountants." Bankruptcy Rule 2014(a).

The Debtor and Mr. and Mrs. Titus filed a counterclaim against Barnett in Barnett's foreclosure action, and sought a money judgment against Barnett based on the theory of lender's liability. It appears that the major collateral securing the debt owed to Barnett was a commercial property located in Bradenton, Florida. Before the lawsuit was concluded, the Law Firm, on behalf of the Debtor and on behalf of Mr. and Mrs. Titus, entered into a settlement with Barnett whereby Barnett agreed that the property was to be sold and the proceeds obtained from the sale were to be divided as follows: $300,000 was to be paid to Mr. and Mrs. Titus so they could pay their obligation to the United States of America (IRS) for the tax liability arising out of their position as "responsible persons" of the Debtor, a liability based on 26 U.S.C. § 6672; $200,000 was to be paid to the estate as part of the transaction; and $70,000 was to be paid to Mr. Titus as a "consulting fee".

The original Application for Allowance of Fees was vigorously opposed by the Office of the United States Trustee on the basis that the Law Firm violated the mandatory requirement of Bankruptcy Rule 2014 by having failed to disclose the Law Firm's connection with Mr. and Mrs. Titus and the Law Firm, in fact, had an actual conflict in that not only did Mr. and Mrs. Titus claim to be creditors of the estate, but they were insiders and had substantial economic interest in the outcome of the litigation with Barnett, which interest was ultimately recognized and amply rewarded in the settlement of the litigation with Barnett.

In opposition to the original Fee Application, the Office of the United States Trustee urged a total forfeiture of all fees on the basis that under applicable legal principles,

a violation of Bankruptcy Rule 2014 mandates a total forfeiture of all fees. *In re Hathaway Ranch Partnership,* 116 B.R. 208 (Bankr.C.D.Cal.1990); *In re Florida Peach Corporation of America, International Division,* 110 B.R. 589 (Bankr. M.D.Fla.1990); *In re Flying E Ranch Co.,* 81 B.R. 633 (Bankr.D.Colo.1988); *Matter of Arkansas Co., Inc.,* 798 F.2d 645 (3rd Cir. 1986); *Roger J. Au & Son, Inc. v. Aetna Insurance Co.,* 64 B.R. 600 (Bankr. N.D.Ohio 1986); *In re Ginco, Inc.,* 105 B.R. 620 (Bankr.D.Colo.1988).

The Law Firm concedes, as it must, that it had a duty to disclose the Law Firm's connection with Mr. and Mrs. Titus, and that it did in fact violate Bankruptcy Rule 2014. However, the Law Firm contends that this omission was innocent and inadvertent, and not intentional, and a total forfeiture is overly harsh and it would be unfair and inequitable to deprive the Law Firm of all compensation for its services which were otherwise beneficial to the estate. In addition, the Law Firm contends that part of the services rendered by the Law Firm were in connection with the sale of the Bradenton property, which sale produced the funds to the estate, but since the appointment of the Law Firm as special counsel was limited to the representation of the estate's interest in the lawsuit, it is conceded by the Law Firm that services rendered in connection with the sale would not be compensable in any event.

The principles governing the allowance to professionals with a conflict of interest were initially considered by the Supreme Court in the case of *Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1940). Since that time, the subject has received extensive treatment by the Courts, especially since the enactment of the Code, and the Courts typically require a strict compliance with the no-conflict rule in order to maintain the integrity of the system. *In re Diamond Lumber,* 88 B.R. 773, 775 (N.D.Tex.1988).

To overcome a strict interpretation of the no-conflict rule, especially the mandate of Bankruptcy Rule 2014, the Law Firm contends that if the Code Sections dealing with the appointment of professionals are read together, it could be inferred that the fact that the Law Firm represents a creditor does not, per se, bar the firm to represent the estate. In this connection, the Law Firm points to § 327(c) of the Code, which deals with employment of professionals and provides that a professional is not disqualified from employment solely because the professional also represents a creditor. The reading of § 327(c) suggested by the Law Firm would, in practice, render the mandate of Bankruptcy Rule 2014 totally meaningless and condone non-disclosure if the Law Firm would not have been automatically disqualified because it also represented a creditor. Moreover, there is an additional difficulty with this argument which lies in § 327(c), which provides that if there is an objection by another creditor or by the United States Trustee, then the Court shall disapprove the Application for Employment if there is an actual conflict of interest.

It is true that in the present instance, neither a creditor nor the United States Trustee initially interposed an objection to the employment of the Law Firm. Of course, there is a simple explanation for this which is the undisputed fact that when the Application to Retain the Law Firm was considered, no one was aware of the actual conflict of interest of the Law Firm which clearly existed. The position urged of the Law Firm, that if the United States Trustee searched the record it would have learned of the fact that Mr. and Mrs. Titus were major creditors of the Debtor, is without merit. There is no duty placed on the United States Trustee or on creditors to search the record for the existence, vel non, of a conflict of interest of a professional sought to be employed. On the contrary, there is a definite affirmative duty placed on a professional to disclose his or her connection with parties whose interest is or may be antagonistic or opposite to the interest of the general estate and a failure to comply with the mandate of Bankruptcy Rule 2014(a) merits a total forfeiture of all fees. *In re B.E.S. Concrete Products, Inc.,* 93 B.R. 228, 237 (Bankr.E.D.Cal.1988).

In sum, this Court is satisfied that the Motion For Rehearing And Reconsideration Or To Alter Or Amend Order On Amended Application For Allowance Of Administrative Expenses By Fowler, White, Gillen, Boggs, Villareal & Banker. P.A. is not well taken and should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion For Rehearing And Reconsideration Or To Alter Or Amend Order On Amended Application For Allowance Of Administrative Expenses By Fowler, White, Gillen, Boggs, Villareal & Banker. P.A. be, and the same is hereby, denied and the previous Order which denied the Law Firm's Application for Allowance be, and the same is hereby, reaffirmed.

DONE AND ORDERED.