**In re GENLIME GROUP, L.P., Debtor.**

**Bankruptcy No. 93–33249.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Feb. 18, 1994.

---

Jeffrey Levinson, Cleveland, OH, for debtor.

Dean Harvalis, Chicago, IL, Asst. U.S. Trustee.

Daniel McDermott, Derrick Rippy, Office of the U.S. Trustee, Cleveland, OH.

**OPINION AND ORDER DENYING AMENDED APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF CONRAD J. MORGENSTERN & ASSOCIATES, INC. AS FINANCIAL ADVISOR**

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court on the Genlime Group, L.P.'s (the "Debtor") amended and restated application for order authorizing employment of Conrad J. Morgenstern & Associates, Inc. ("CMA") as financial advisor and the United States Trustee's ("UST") objections thereto (the "Objection"). Upon consideration of the evidence adduced at the hearing on this matter, the Court finds that the Debtor's amended application is not well taken and should be denied with prejudice.

## FACTS

The Debtor filed an application to employ CMA on December 1, 1993.

This Court's order dated December 6, 1993 stated that the application could not be approved by the Court because of certain deficiencies contained in the application.

Thereafter, on January 12, 1994, the Debtor filed the instant amended and restated application for order authorizing employment of CMA.

The Debtor is engaged in owning, operating and managing a limestone mining and processing facility located in Genoa, Ohio.

The Debtor financed both its purchase of the business in Genoa, Ohio and its operation of the business through loans (the "Loans") from Glen Fed Financial Corp. ("Glenfed"). The maturity date of the Loans was November 7, 1993.

After Glenfed purportedly refused to refinance the Loans, the Debtor's chief financial officer Rick Banks ("Banks") testified that he was unsuccessful in his attempts to obtain replacement financing. Subsequently, the Debtor hired CMA to seek replacement financing in September of 1993.

The Debtor and CMA failed to obtain alternative financing for the Loans and the Debtor filed a petition under chapter 11 of title 11 on November 15, 1993.

The Debtor's application states that CMA was paid a $15,000.00 prepetition retainer by the Debtor which was "fully earned upon receipt". According to Banks, the Debtor's only witness at the hearing on this matter, the retainer was paid to CMA pursuant to a prepetition oral agreement between CMA and the Debtor.

The Debtor seeks to pay CMA a postpetition monthly retainer of $3,000.00 per month for professional services.

The Debtor further proposes to pay CMA 1% of any replacement financing obtained by the Debtor. The Debtor proposes that this fee should be paid to CMA irregardless of

whether CMA is successful in obtaining replacement financing for the Debtor.

Included within CMA's proposed duties are: "[a]ssistance in the development, negotiation, and promulgation of a plan of reorganization", "[a]ssistance in the preparation of documents necessary for confirmation of a plan of reorganization in this chapter 11 case, including debt agreements and financial information contained in the disclosure statement", and "[p]erformance of such other functions as requested by Debtor or its counsel to aid Debtor in its business and reorganization, including, but not limited to, advice on strategies for reorganization and assistance in claims analysis".

## DISCUSSION

### Compliance with Bankruptcy Rule 2014

■ Bankruptcy Rule 2014 requires an applicant to set forth the applicant's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee". *See* Fed.R.Bankr.P. 2014. Further Rule 2014 requires an applicant to provide a verified statement indicating the professional's connections with creditors and other interested parties.

In describing the requirements of Rule 2014 the court in *In re Marine Outlet, Inc.* stated that:

[t]here is no duty placed on the United States Trustee or on creditors to search the record for the existence, vel non, of a conflict of interest of a professional sought to be employed. On the contrary, there is a definite affirmative duty placed on a professional to disclose his or her connection with parties whose interest is or may be antagonistic or opposite to the interest of the general estate[.]

*In re Marine Outlet, Inc.*, 135 B.R. 154, 156 (Bankr.M.D.Fla.1991) (citation omitted).

The Debtor's application does not satisfy the requirements of Rule 2014 because it fails to disclose the relationship between CMA and Benesch, Friedlander, Coplan & Aronoff ("BFCA"), the Debtor's attorney. Despite Banks' testimony that the Debtor was referred to BFCA by CMA, the application does not mention any connection between CMA and BFCA. *See* Objection at p. 3–4, para. 7.

Additionally, the application fails to disclose the relationship, if any, between CMA and creditors of the Debtor as noted by the UST at the hearing on this matter. *See* Objection at p. 1–2, para. 2. The Amended and Restated Affidavit of Conrad J. Morgenstern (the "Affidavit") filed with the Debtor's amended application to employ CMA states that:

[a]s a result of my extensive experience in bankruptcy proceedings both as a former United States Trustee and an attorney in private practice, [CMA] has in the past acted as consultant and will likely in the future act as a consultant to parties who may be creditors of the Debtor, either directly or indirectly as adviser to a committee, in matters completely unrelated to this case and not in matters adverse to Debtor, nor in any capacity which confidential knowledge of a creditor has been acquired which would bear on Debtor's employment of [CMA] in this case.

The Court concludes that the Affidavit fails to comply with Rule 2014 because it fails to minimally describe the creditors of the Debtor with which CMA has relationships and the nature of such relationships. Despite the Affidavit's assurances that any relationships between CMA and creditors are "not in matters adverse to Debtor", creditors are entitled to determine for themselves whether such relationships are adverse to the interests of the estate.

### Potential Duplication of Effort

Although assertions contained within the Debtor's amended application indicate that there will be no duplication of effort between CMA and other professionals, the Debtor has not persuaded the Court that CMA's proposed duties do not encompass duties of counsel for the Debtor. BFCA has already been retained to serve as counsel for the Debtor. As previously noted, included within CMA's proposed duties are: "[a]ssistance in the development, negotiation, and promulgation of a plan of reorganization", "[a]ssistance in the preparation of documents neces-

sary for confirmation of a plan of reorganization in this chapter 11 case, including debt agreements and financial information contained in the disclosure statement", and "[p]erformance of such other functions as requested by Debtor or its counsel to aid Debtor in its business and reorganization, including, but not limited to, advice on strategies for reorganization and assistance in claims analysis". These terms of employment apparently duplicate the duties of BFCA as the Debtor's counsel. *See In re Liberal Market, Inc.,* 24 B.R. 653, 664–65 (Bankr.S.D.Ohio 1982) (citations omitted) (stating that "[a] debtor's estate should not bear the burden of a duplication of services"); *see also In re Roger J. Au & Son, Inc.,* 114 B.R. 482 (Bankr.N.D. Ohio 1990) (services performed by debtor's counsel in adversary for which special counsel had been appointed were non-compensable); *c.f. Cle–Ware Industries, Inc. v. Sokolsky (In re Cle–Ware Industries, Inc.),* 493 F.2d 863, 871 (6th Cir. 1974) *cert. denied* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974) (noting that the Sixth Circuit disapproves of the practice of appointing separate counsel as attorney for the debtor-in-possession and compensating another attorney at the expense of the estate).

### The Potential Adverse Interest of CMA

■ Moreover, CMA possesses a potential adverse interest to the extent of the $15,000.00 prepetition retainer received from the Debtor which was purportedly earned on receipt by CMA. *See* Objection at p. 4, para. 8. As this Court noted in *In re 419 Co.,* the "[a]pplicant has the burden 'to come forward with facts pertinent to eligibility and to make full, candid and complete disclosure'". *In re 419 Co.,* 133 B.R. 867, 869 (Bankr.N.D.Ohio 1991) (quoting *In re Peoples Sav. Corp.,* 114 B.R. 151, 154 (Bankr.N.D.Ill.1990)). The evidence provided by the Debtor has failed to persuade the Court that the prepetition-retainer paid to CMA was, in fact, earned on receipt by CMA. Significantly, Banks' testimony at the hearing provided little insight as to the terms of CMA's prepetition retainer.

■ Section 327 "covers both 'actual and potential conflicts of interest' in order to avoid 'even the appearance of conflict'". *In re 419 Co.,* 133 B.R. at 869 (quoting *In re Glenn Elec. Sales Corp.,* 99 B.R. 596 (D.N.J. 1988). As in *In re 419 Co.,* the Court notes, without addressing the merits of any potential preference action, that CMA's prepetition relationship with the Debtor could give rise to a preference action against CMA. *In re 419 Co.,* 133 B.R. at 867.

### The Necessity for Retaining CMA

Furthermore, as the UST noted at the hearing on this matter, the Debtor has not come forward with evidence demonstrating the necessity for retaining CMA. *See In re Kingsway Purchasing, Inc.,* 69 B.R. 713 (Bankr.E.D.Mich.1987) (denying creditors' committee's application for employment of a secretary where application provided insufficient information to allow court to determine whether retention of a secretary was necessary); *In re Offutt,* 45 B.R. 80 (Bankr. W.D.Ky.1984) (denying application to employ attorney for trustee where application failed to provide specific facts demonstrating the necessity for employing attorney). The arguments of the Debtor and Banks' testimony at the hearing have not persuaded the Court that the Debtor will be unable to obtain refinancing through the Debtor's own efforts or through the efforts of BFCA. Indeed, only meager evidence was provided as to the extent of the Debtor's efforts in seeking a refinancing source for the Loans prior to consulting CMA.

### The Reasonableness of the Proposed Terms of Retaining CMA

The Debtor has also failed to provide sufficient probative evidence as to the reasonableness of CMA's proposed fee. *See* Objection at p. 3, para. 6. The Debtor provided scant evidence at the hearing on this matter as to the extent of CMA's experience in soliciting commercial financing. Moreover, the evidence adduced at the hearing failed to provide the Court with a sufficient basis to weigh the propriety of the 1% fee which the Debtor proposes to pay to CMA irregardless of whether CMA obtains a lender to refinance the Loans.

### The Proposed Monthly Postpetition Retainer Payments

Lastly, the Court cannot approve the proposed disbursement to CMA of a postpetition

retainer of $3,000 per month. *See In re Cal-Inland, Inc.*, 124 B.R. 551 (Bankr.D.Minn. 1991) (disapproving debtor's request to use postpetition revenues to make additional retainer payments to professional where debtor failed to demonstrate that case was unusually large or of sufficient complexity to impose an undue hardship on professional); *see also* Objection at p. 2–3.

Section 331 provides for disbursements to professionals "[a]fter notice and a hearing". *See* 11 U.S.C. § 331. Assuming arguendo that disbursements to professionals prior to notice and a hearing are authorized under the Bankruptcy Code, the Debtor has not met its burden of proving that this represents the type of "rare" case where disbursements to professionals should be allowed prior to notice and a hearing. *In re Knudsen,* 84 B.R. 668 (9th Cir. BAP 1988). As the court made clear in *In re ICS Cybernetics, Inc.,* postpetition payments to professionals prior to notice and a hearing are not justified where "[t]here are no factual allegations in [the applications submitted by the professionals] address[ing] the specific criteria of *Knudsen* other than conclusory statements concerning having to wait six months to be paid and protecting the [d]ebtor from large but uncertain periodic payments of fees and disbursements". *In re ICS Cybernetics, Inc.,* 97 B.R. 736, 738 (Bankr.N.D.N.Y.1989).

**Dismissal with Prejudice**

The Court recognizes that denying a debtor's application to employ a professional chosen by the debtor is a serious matter. Nonetheless, in certain circumstances a court must deny a debtor's application to retain a professional "in order to preserve the integrity of the bankruptcy system [and] avoid[ ] any appearance of impropriety". *In re 419 Co.,* 133 B.R. at 870.

Furthermore, the Court cannot condone the Debtor's continual failure to come forward with facts pertinent to its application to employ CMA. The Court's order dated December 6, 1993 granted the Debtor an opportunity to amend the application to employ CMA. The Debtor was granted a hearing on its amended application to employ CMA on February 10, 1994. The Objection, which was served upon the Debtor prior to the hearing, noted the UST's concerns with the Debtor's application to retain CMA. At the hearing, the Debtor was provided with the opportunity to present evidence and address the objections of the UST to the Debtor's application to employ CMA. Again, the Debtor failed to provide a sufficient factual basis to support approval of its application to retain CMA. Consequently, the Court concludes that denial of the Debtor's application to employ CMA with prejudice is warranted.

In light of the foregoing, it is therefore

ORDERED that the Debtor's application to employ Conrad J. Morgenstern & Associates is denied with prejudice.