## In re NATIONAL DISTRIBUTORS WAREHOUSE COMPANY, INC.

### Bankruptcy No. 92–30472S.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Nov. 4, 1992.

Ben Arnold, Arnold, Grobmyer & Haley, Little Rock, AR, for debtor.

Rick Taylor, Little Rock, AR, David J. Harris, Memphis, TN, for NBC.

John R. Branson, Heiskell Donelson Bearman Adams Williams & Kirsch, Memphis, TN, William P. Rainey, Marion, AR, for debtor and O'Neal.

James J. McMahon, Memphis, TN, tax counsel for debtor.

## ORDER GRANTING MOTION TO MODIFY COURT ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the "Response and Objection to Employment of Counsel by Debtor and Motion to Modify Court Order Dated August 24, 1992," filed on October 6, 1992, by the National Bank of Commerce. The attorneys for the debtor responded to the objection and hearing on the matter was held on October 13, 1992, at which Ben F. Arnold appeared on behalf of the debtor and himself, John R. Branson, and William Rainey, appeared on behalf of themselves. Richard Taylor appeared on behalf of the National Bank of Commerce ("NBC"). Joanne Goldman attended the hearing on behalf of the U.S. Trustee.

National Distributors Warehouse Company, Inc. ("NDW") is a corporation owned and operated by Michael O'Neal ("O'Neal"). O'Neal also owns the majority interest in the corporation O'Neal Classic Chrome ("OCC"). Of these persons, only NDW filed for bankruptcy protection. This Chapter 11 proceeding was filed on August 10, 1992, on which date, the debtor filed an application seeking to employ the following attorneys to assist in the bankruptcy proceeding: Arnold, Grobmyer & Haley, as bankruptcy counsel; William P. Rainey in connection with certain litigation pending in the District Court for the Eastern District of Arkansas; and Heiskell, Donelson, Bearman, Adams, Williams, & Kirsch, of Memphis, Tennessee as litigation counsel for the litigation pending in the Eastern District of Arkansas.[1]

The testimony at trial indicated that the primary source of the conflicts of interests arise from the inextricably intertwined relationship conducted by Michael O'Neal with and among his corporations. Michael O'Neal is the sole shareholder, sole director and president of the debtor corporation, National Distributors Warehouse Company, Inc. O'Neal is indebted to NDW in the amount of at least $465,429. This debt accrued over several years by virtue of O'Neal using the corporate checkbook as his own. The evidence showed that O'Neal directed the corporation to pay his monthly mortgage payment in excess of $4,000 on his one-half million dollar home from the corporate accounts. The corporation paid

---

1. An application to employ tax counsel was also filed and approved. NBC raises no issues with regard to tax counsel.

O'Neal's credit cards, funneled cash to O'Neal as well as his mother, and made payments relating to the vehicles driven by his wife and adult daughters. The Corporation also makes payments on the property settlement ordered in O'Neal's divorce. O'Neal disputes, however, that the payments to the former spouse are for his "benefit." O'Neal personally invested in the nickel market; however, he used corporate funds for these rather substantial investments. NDW also pays for a condominium and boat at Heber Springs, access to which is restricted to O'Neal and his family.

From the evidence, it is clear that O'Neal has no intention of repaying the $465,429: he has never made any effort to reduce his shareholder account and assertedly cannot afford to do so. Indeed, O'Neal claims no inkling of the amount he owes the corporation: he never reviewed it before the filing of the bankruptcy. He has made no effort to pay the shareholder account back nor has he made any provision to do so. O'Neal considers payment by the corporation of his personal loans reasonable because NDW was not paying its rent under the oral lease from "me to me." The most compelling evidence that O'Neal has no intention of repaying the debt was his demeanor at trial. "L'Etat C'est Moi" was clearly his method of management. Or, as stated by O'Neal: before the bankruptcy I "didn't have to answer to anyone," or "I am the corporation."

O'Neal Classic Chrome was formed in February 1992, and became the recipient (in exchange for questionable consideration) of assets belonging to the debtor NDW. OCC is engaged in essentially the same business as NDW and now employs a large number of former NDW employees. Thus, the evidence at trial demonstrated that OCC is indebted to the debtor, having received transfers of the debtor's assets without consideration. OCC is also one of the largest creditors of NDW. The evidence at trial indicated that O'Neal failed to respect the separateness of himself, NDW, and OCC in financial transactions.

Indeed, the evidence overwhelmingly demonstrated that O'Neal treats the corporations as his personal conduits for ready access to funds.

### Disinterested Persons

Section 327 of the Bankruptcy Code governs employment of counsel. Pursuant to section 1107(a), this section is applicable to a debtor-in-possession. Section 327(a) and (e) provide in pertinent part:

(a) [E]xcept as otherwise provided in this section, the trustee,[2] with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this Title.

\* \* \* \* \* \*

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(a), (e). Thus, an attorney must be a "disinterested person," and cannot "hold or represent an interest adverse to the estate." A disinterested person is one who

does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, in connection with, or interest in, the debtor ... or for any other reason.

11 U.S.C. § 101(14)(E). To hold an adverse interest

[M]eans for two or more entities ... to possess or assert mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between the rival claimants as to which, if any, of them the disputed

**2.** The debtor-in-possession has the same func- tions and duties as a trustee. 11 U.S.C. § 1107.

right or title to the interest in question attaches under valid and applicable law. To "represent an adverse interest" means to serve as agent or attorney for any individual or entity holding such an adverse interest.

*In re Hoffman,* 53 B.R. 564, 565–66 (Bankr.W.D.Ark.1985) (quoting *In re Roberts,* 46 B.R. 815,· 826–27 (Bankr.D.Utah 1985)). Thus, the bankruptcy laws prohibit not just actual conflict but also the potential for conflict. *In re Glenn Electric Sales Corporation,* 99 B.R. 596, 601 (D.N.J.1988). The purpose of section 327 is to prevent even the appearance of conflict, irrespective of the integrity of the person or firm under consideration. *Id.* ("There should be neither an opportunity for the exercise of conflicting interests, nor even 'the *appearance* that dual loyalty *may* exist.'" (quoting *In re Codesco, Inc.,* 18 B.R. 997, 999–1000 (Bankr.S.D.N.Y.1982)).

 Professional persons must be particularly sensitive to these issues in the bankruptcy setting. Attorneys are fiduciaries and as such must maintain a higher standard of conduct:

> A fiduciary ... may not perfect his claim to compensation by insisting that, although he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries "at a level higher than that trodden by the crowd."

*Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941). Further, in the bankruptcy setting, all of the debtor's assets, finances, and business transactions are before the Court, under the scrutiny of creditors and trustees. Debtors are afforded great relief from debts and obligations and creditors' rights may be irrevocably altered. Both debtors and creditors are required to be vigilant in protecting their rights during the proceedings. The finality and abbreviation of determination of rights require great scrutiny of the debtor's interests to ensure that the debtor and its credi-

tors are treated fairly within the confines of the Code. Accordingly, issues of "disclosure," "disinterestedness" and appearances of propriety are particularly critical.

### *Arnold, Grobmyer & Haley*

██ Ben Arnold of Arnold, Grobmyer & Haley was retained by the debtor to prepare its Chapter 11 petition and the other initial documents for its Chapter 11 case. The application averred that the law firm holds no interest adverse to NDW, "represents no creditor in this case, and is in all respects disinterested." The motion did not disclose that O'Neal Classic Chrome had paid the initial retainer to the Arnold law firm. It should have. *See In re Hathaway Ranch Partnership,* 116 B.R. 208, 219 (Bankr.C.D.Cal.1990). The statement of compensation, filed on September 4, 1992, after the Court granted the ex-parte motion for approval of attorneys, disclosed that

> the debtor in this case has paid to the undersigned the sum of $10,000.00, plus $600.00 for the filing fee in this case. The source of the paid sum was debtor's earnings. In addition, Arnold, Grobmyer & Haley, a professional association, has been paid the sum of $25,000.00 by O'Neal Classic Chrome, Inc., an Arkansas corporation.

At the time of the filing of the petition, O'Neal, the representative of the debtor did not disclose to the Arnold firm that numerous transfers of assets among O'Neal, OCC, and the debtor had occurred, such that Arnold was unaware that adverse interests lurked. The Arnold firm learned of some of the transactions, however, in the preparation of the debtor's schedules.

 As a general rule, an attorney representing a debtor should not receive compensation from any of the creditors, directly or indirectly. *In re WPMK, Inc.,* 42 B.R. 157 (Bankr.D.Hawaii 1984). A professional, including an attorney, who accepts payment from third party to represent the debtor-in-possession has an actual conflict of interest that disqualifies that professional from being employed by the debtor-in-possession, absent a showing that

the interests of a third party and the bankruptcy estate are identical. *In re Hathaway Ranch Partnership*, 116 B.R. 208, 218 (Bankr.C.D.Cal.1990); *see In re Crimson Investments, N.V.*, 109 B.R. 397, 402 (Bankr.D.Ariz.1989). In the instant case, the Arnold firm received the major portion of its retainer from a third party, OCC. It is clear from the evidence that the interests of OCC are not identical to those of the debtor-in-possession, NDW. Indeed, the interests of OCC are directly in conflict with the interests of the debtor, and O'Neal, the person directing both NDW's and OCC's affairs. OCC is a creditor of the debtor. O'Neal is the chief executive officer of OCC and NDW. OCC is also purportedly indebted to NDW. While the interests of the chief executive officer, shareholders and corporations often overlap, in this instance, the evidence clearly demonstrated that actual conflicts exist with each of these technically distinct natural and corporate persons by virtue of the "I-am-the-corporation" view of O'Neal.

The entangling of interests of O'Neal, OCC, and the debtor, coupled with the conflicting interests of these persons, and the receipt by the attorney of a retainer from OCC creates a conflict of interest on the part of the Arnold firm. While the Arnold firm asserts that it has "no 'entangling associations' with OCC that would cause it to have an interest adverse to NDW," the entanglement is created by the virtual alter-ego status of O'Neal, NDW, and OCC. Thus, in this particular instance, receipt of the retainer from OCC is grounds for disqualification.

### Lender Liability Counsel

■ William P. Rainey and the Heiskell firm were retained in connection with certain litigation pending in the District Court for the Eastern District of Arkansas, *National Bank of Commerce v. National Distributors Warehouse, Inc.*, Case No. J–C–92–184 and *National Distributors Warehouse Company, Inc. v. National Bank of Commerce*, Case No. J–C–92–74. Both NDW and O'Neal personally are plaintiffs in the latter action. Neither Rainey nor the Heiskell firm are familiar with

bankruptcy practice and were to represent the debtor solely with regard to the pending district court litigation.

Rainey represents both O'Neal and the debtor in the lender liability action. Rainey has received compensation from O'Neal, OCC and the debtor. The debtor's motion for approval of counsel requested that the employment of Rainey be on the same terms as the pre-petition fee arrangement with NDW. However, no disclosures were made to the Court regarding the fee arrangements until the date of the hearing. Rainey has represented the corporation OCC during its formation and in transactions with the debtor corporation.

■ The Heiskell firm made no disclosures to the Court regarding the fee arrangements until the date of the hearing. With respect to this firm, the disclosures are still lacking inasmuch as the affidavit submitted by the Heiskell firm as evidence did not disclose the fee arrangements, only the amounts paid to date. John Branson appeared on behalf of the Heiskell firm, and advised the Court that while his firm has previously represented another creditor of the debtor, he works only on the lender liability case brought by O'Neal. The failure to disclose the pertinent matters alone is not only cause for disqualifying the attorney, it is grounds for disgorgement of fees. *In re Hathaway Ranch Partnership*, 116 B.R. 208, 220 (Bankr.C.D.Cal. 1990).

■ The fact that these particular attorneys were unaware of the specific requirements under the Bankruptcy Code does not excuse them. The unfamiliarity with the conflict of interest and fee provisions does not excuse the lack of compliance with the provisions. *In re Marine Power & Equipment Co., Inc.*, 67 B.R. 643 (Bankr.W.D.Wash.1986). Even a negligent failure to disclose facts required in connection with application for an order approving employment will not relieve counsel of the consequences of their failure. *Hathaway*, 116 B.R. at 219. Indeed, representation and conduct of the bankruptcy estate require the utmost sensitivity to not only

actual but also potential conflicts of interest. As noted by the Court in *Marine Power:*

> Representation of clients with divergent interests who are subject to strong financial and personal pressures is a common incident to the practice of law. It is a fact of life that the stress and exigencies which attend these circumstances may distract from or attenuate considerations of propriety. But the rules which govern the conduct of counsel have their genesis in the need of courts and parties to be informed as to conflicts of interest so that they may be fairly dealt with, in reality and in appearance. The discretion exercised here is based on the principal that representation and conduct of a bankruptcy estate require the utmost sensitivity to actual or potential conflicts of interest, particularly on the part of its fiduciaries and of attorneys.

*Marine Power,* 67 B.R. at 654.

Rainey and the Heiskell firm argue that since they represent O'Neal and the debtor only in the district court lender liability litigation and will take no other action with respect to any other party in interest to the bankruptcy proceedings, there is no actual or potential conflict of interest. While it is unclear that the interests of O'Neal and the debtor are in fact identical in the lender liability action, the attorneys imply that they are the same. However, the fact that NDW and O'Neal have an actual conflict of interest in this proceeding prevents Rainey and the Heiskell firm from representing both entities in the separate litigation. The representation of O'Neal is an interest adverse to the estate such that concurrent representation of the debtor is impermissible. *See Colorado National Bank of Denver v. Ginco, Inc.,* 105 B.R. 620 (D.Colo. 1988) ("Subsection (a) [of section 327] imposes a more stringent adverse interest test: An attorney may not 'hold or represent an interest adverse to the estate' in *any* matter. In the pending state litigation, FMTG already represents Richard Ginder—the principal shareholder, officer and debt-guarantor of the corporation. Mr. Ginder may have an equity interest in Ginco and is a potential target for claims of corporate mismanagement. Under those circumstances, dual representation by FMTG of the estate and Mr. Ginder is a sufficient conflict to be an adverse interest under both subsection (a) and subsection (e)."); *Roger J. Au & Son, Inc. v. Aetna Insurance Company,* 64 B.R. 600 (N.D.Ohio 1986).

### Conclusion

The debtor is in bankruptcy where conflict of interest issues are particularly sensitive. The facts presented to the Court overwhelmingly demonstrate that O'Neal, OCC and the debtor have significant claims against each other. These are derived in large part from the manner in which O'Neal has operated these companies and used them to pay his rather exorbitant personal expenses. In light of these overwhelming conflicts and the actions of O'Neal, the Court cannot permit any attorney to represent more than one of these three parties in interest before the Court. Further, the attorneys before the Court have become tainted with the conflicts such that they must be disqualified.

 In so ruling, the Court does not rule that dual representation necessarily creates a conflict of interest. It is not uncommon for a single law firm to represent a parent company and its subsidiaries or represent brother-sister corporations. The mere existence of claims between related entities may not alone warrant disqualification. *See In re International Oil Co.,* 427 F.2d 186 (2d Cir.1970); *In re Mulberry Phosphates, Inc.,* 142 B.R. 997 (Bankr.M.D.Fla.1992). In the instant case, however, the conflicts among the parties are so materially adverse that the dual representation by Rainey and the Heiskell firm cannot be permitted. The entanglement of interests coupled with the attorney fee payment by OCC to the Arnold firm likewise disqualifies that firm.

 The disqualification of the debtor's attorneys does not, however, entirely cure the conflict of interest situation. The chief executive officer and shareholder has acted in disregard of the corporate entities to the

detriment of the debtor corporation. The claims of and against the alter-egos are numerous and large. It does not appear that it will be sufficient for each person, natural and corporate, to have its own attorney while O'Neal acts for the debtor-in-possession.[3]

ORDERED that the Motion to Modify Court Order Dated August 24, 1992, is GRANTED. The following counsel for the debtor are hereby disqualified: Arnold, Grobmyer & Haley; William P. Rainey; and Heiskell, Donelson, Bearman, Adams, Williams, & Kirsch. It is

FURTHER ORDERED that the debtor shall forthwith obtain new counsel who shall enter an appearance within thirty (30) days of entry of this Order.

IT IS SO ORDERED.

---

**3.** Courts do not have the power to direct the appointment of a trustee, *sua sponte*. The parties must protect their own interests in this matter. The U.S. Trustee has more than ample support for appointment of a trustee. Section 1104 permits the appointment of a trustee, "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs by the debtor *by current management either before or after the commencement of the case,* or similar cause." 11 U.S.C. § 1104(a)(1) (emphasis added).