**In re BONNEVILLE PACIFIC CORP., Debtor.**

**Bankruptcy No. 92A–27701.**

United States Bankruptcy Court,
D. Utah, C.D.

Dec. 1, 1992.

---

Vernon L. Hopkinson of Cohne, Rappaport and Segal, Salt Lake City, Utah, and Richard Williams, Leo Beus, and Michael Devitt of Beus, Gilbert & Morrill, Phoenix, Ariz., for trustee.

David Leta of Snell & Wilmer, Salt Lake City, Utah, Gen. Counsel for debtor.

Cameron D. Coy, Los Angeles, Cal., for Ernst & Young.

## MEMORANDUM OPINION AND DECISION

JOHN H. ALLEN, Bankruptcy Judge.

This matter came before the Court for hearing on November 30, 1992, on the Fifth Application of Debtor's General Bankruptcy Counsel for Allowance of Interim Compensation and Reimbursement of Expenses. Appearances were made by Vernon L. Hopkinson of Cohne, Rappaport and Segal and Richard Williams, Leo Beus, and Michael Devitt of Beus, Gilbert & Morrill, attorneys for trustee; David Leta of Snell & Wilmer, general counsel for debtor; Cameron D. Coy, attorney for Ernst & Young. Pursuant to the hearing the Court issues the following Decision.

In an order entered December 12, 1991, Hansen, Jones & Leta was approved as attorney for Bonneville Pacific Corporation, then debtor-in-possession. Hansen, Jones & Leta, (HJ & L), continued in this capacity through March 31, 1992. Effective April 1, 1992, by an order entered April 16, 1992, Snell & Wilmer, (S & W), was substituted for HJ & L as debtor's general bankruptcy counsel. This substitution in counsel was a result of the change of firms by the lead attorney for the debtor-in-possession. Subsequently, on June 12, 1992, a trustee, Roger G. Segal, was appointed. On August 4, 1992, S & W was appointed special counsel, for specific limited purposes, to assist the trustee.

The Court has before it the Fifth Application of Debtor's General Bankruptcy Counsel for Allowance of Interim Compensation and Reimbursement of Expenses. This application, (Fifth Application), covers the period from September 1, 1992, through October 31, 1992, but also includes some time which should have been included on a prior application.

Previously, the Court allowed debtor's former counsel's, HJ & L, application for fees and costs in the amount of $149,012.20 for the period from November 18, 1991, through February 29, 1992, (First Application). This allowance has been paid. The Court has also authorized interim payment of the Fourth Application of S & W which was for fees and costs in the amount of $31,650.39 for the period from July 1, 1992, through August 31, 1992. The Order, dated September 9, 1992, allowed payment for compensation and reimbursement of expenses in the amount of $29,650.39, which reflected a voluntary reduction from the original request of $2,000 in fees and $861.39 in costs.

In addition to the applications discussed above, the Court currently has two applications from this applicant under advisement. One is the Second Application for fees and costs for HJ & L in the amount of $64,651.34 and for S & W in the amount of $44,805.06, for the period from March 1, 1992, through April 30, 1992. At the hearing on the Second Application, S & W reduced the amount requested by the sum of $679.95. The other is the Third Application for fees and costs in the amount of $170,431.67 for the period from May 1, 1992, through June 30, 1992.

The Court is now prepared to rule on the Fifth Application, the two applications currently under advisement, and to re-examine the interim amounts already awarded.

Section 330 of the Bankruptcy Code governs compensation of professionals in the bankruptcy context. That section provides,

that "[the] court may award ... to a professional person employed under § 327 ... reasonable compensation for actual, necessary services by such ... professional person ... based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title."

■ The ultimate determination that all requirements of the statute have been met rests with the Court. In order to determine the appropriate compensation, Rule 2016, Fed.R.Bankr.P. requires that:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Taking the applications as submitted, the Court then has the affirmative duty to examine and, if appropriate, challenge requested fees and costs even in the absence of objection. "The supervision of professional fees is essential to the operation of the bankruptcy law, integral to the bankruptcy system and required by the Bankruptcy Code. This Court believes it is duty-bound to evaluate the reasonableness of professional compensation and the duty cannot be delegated." *In re Concept Clubs, Inc.*, 125 B.R. 634, 636 (Bankr. D.Utah 1991).

■ The burden of proving the value of the services for which compensation is sought is always on the applicant. *In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bankr.E.D.Pa.1981).

■ The court must ascertain the nature and extent of the necessary and appropriate services rendered by the professional and then assess the reasonable value of those services. This Court believes that underlying the compensation requirements is the responsibility borne by the professional to aid in the administration of the case and to guide and assist the client in fulfilling its duties under the Bankruptcy Code.

■ It is essential that attorneys laboring under the constraints of the Bankruptcy Code requirements never forget that when representing a debtor-in-possession, the interests of the estate must take priority. If attorneys are found to have actually represented the interest of the principals of the debtors, to the detriment of the estate, then compensation must be denied. *In re Kendavis Industries Intern., Inc.*, 91 B.R. 742, 749 (Bankr.N.D.Tex.1988). It is fatal to a Request for an Award of Compensation for counsel for the debtor-in-possession to have engaged in tactics that led to excesses, delay of the case, protection of principals to the impairment of creditors and unproductive, unnecessary litigation. This Court cannot tolerate such behavior.

■ Professionals performing duties for the estate are held to high fiduciary standards, and act as officers of the Court. The requirements contained within the compensation sections of the Code were enacted to "guard against a recurrence of the 'sordid chapters' in the history of fees in corporate reorganizations." S.Rep. No. 989, 96th Cong., 2d Sess. 40 reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5826.

With all of this in mind, the Court today is focused on an analysis of the troubling question of whether the services performed by this applicant were actual and necessary for the pursuit of a legitimate reorganization within the contemplation of the Bankruptcy Code, or were they, instead, designed to deliberately sabotage efforts to ascertain the truth concerning the financial picture of this debtor; and in the same vein, was it essential to sacrifice the truth in order that insiders' desire for protection and profit might be realized.

In order to ascertain the truth in this case, the Court has been forced to embark on a lonely quest. Under the powers given in 11 U.S.C. § 105 the Court authorized the appointment of an examiner. In the ruling authorizing the appointment of an examiner, various concerns were articulated. Because of these concerns, the examiner was charged to conduct an extensive examina-

tion into the business affairs of the debtor, including possible fraud or mismanagement. The Court is convinced that with proper representation by counsel for the debtor-in-possession, these concerns need never have arisen.

The examiner filed his report and in it described numerous complex transactions, taking place over a period of years, which enabled the debtor to report fictitious "earnings" and inflated asset values. The Examiner's Report also revealed that through this series of transactions, the debtor and its principals were able to artificially inflate the value of the stock of the debtor and obtain huge financial rewards for the individuals involved. It targeted the necessity for a constant supply of outside funding for the entity's survival. The successful, legitimate business portrayed by counsel for the debtor did not exist.

Prior to the release of the Examiner's Report, counsel for debtor-in-possession filed a Disclosure Statement and Plan of Reorganization. It became evident, from the financial information contained within the Examiner's Report, that the Plan and Disclosure Statement were wholly inappropriate. It staggered the imagination to even suppose that counsel, in pursuit of the truth, could have been justified in filing such documents. Not only were the Plan and Disclosure Statement wholly irreconcilable with the Examiner's Report, inconsistencies existed between the Disclosure Statement and Plan, the Statement of Affairs and Schedules of Assets and Liabilities and the Monthly Financial Reports which were filed with the Bankruptcy Court. The Court viewed the debtor's Plan and Disclosure Statement as having been proposed for motives other than the benefit of the estate. What these motives might have been seems clear when it is remembered that significant time was spent by counsel for the debtor attempting to convince the Court to issue an injunction to protect certain principals of the debtor. These same principals were later identified by the Examiner as members of the management team involved in highly questionable transactions.

■ Although the United States Trustee had filed a Motion for the Appointment of Chapter 11 Trustee or, in the Alternative, for Conversion of Case to One Under Chapter 7, the Court, expressing the concerns raised by the Examiner's Report as well as concerns that had manifest themselves throughout the numerous hearings, arguments and testimony that spanned the life of this case, on June 11, 1992, *sua sponte* ordered the appointment of a trustee. This Court is always mindful of the fact that the appointment of a trustee is "an extraordinary remedy" and a remedy only utilized when "clear and convincing grounds exist ...". *In re TS Industries, Inc.*, 125 B.R. 638, 643 (Bankr.D.Utah 1991); *In re North American Communications, Inc.*, 138 B.R. 175 (Bankr.W.D.Pa.1992).

■ The damage that was inflicted on the creditors of this estate by the dereliction of duty of counsel for the debtor-in-possession has yet to be totalled. Initially, it can be determined that by the time a trustee was appointed approximately $2.5 million dollars in professional fees had been charged against the estate while the Court was still vainly searching for some indication of the true status of the debtor. In addition, during the same time period, the profit and loss statements contained in the Financial Reports filed with the Court indicated the debtor consistently lost enormously large sums of money. The efforts of counsel, however, seemed to be directed toward protection of the principals and their *status quo*, rather than any attempt to save the estate.

■ The independent duty to review compensation may require the disgorgement of compensation pursuant to an interim request. Bankruptcy Courts have the power to order that professionals disgorge compensation previously received. This is especially true with respect to attorneys representing the debtor, since 11 U.S.C. § 329 allows the Court to review payments to the debtor's attorney whether made prepetition or post-petition and regardless of the source of such payments. Such review is especially mandated, however, when interim awards exceed the "reasonable" and

"necessary" compensation standards of 11 U.S.C. § 330(a). *In re Gibbons–Grable Co.*, 141 B.R. 614 (Bankr.N.D.Ohio 1992). Where the debtor and the attorney for the debtor have misrepresented facts to the Court with the magnitude that has occurred in this case, there is no alternative available to the Court but to deny all compensation, including that previously awarded. Indeed, any attempt to deceive the Court and wreak havoc on the estate is misconduct not to be tolerated and when such occurs, courts have been brutally harsh. *Matter of Evangeline Refining Co.*, 890 F.2d 1312 (5th Cir.1989).

Vigilance is required by court-approved counsel, in particular, to enforce the standards of the Code. Numerous limitations imposed by the Bankruptcy Code upon compensation of court-approved counsel are designed to insure the highest standards of ethical conduct and minimize the overhead expenses which can easily deplete a debtor's estate. This Court believes that some vehicle is necessary to control possible abuses and to compel court-approved counsel to perform their fiduciary duty.

IT IS THEREFORE ORDERED that although the Court approved the employment of HJ & L, and later S & W, as general counsel for the debtor-in-possession, and further authorized S & W's appointment as special counsel for the trustee, subsequent revelations discussed above have convinced the Court that not only will all fees and costs be denied for the Fifth Application before the Court today, and for applications currently under advisement, but also disgorgement of all previously awarded sums will be required of S & W and HJ & L.