In re **BLACK HILLS GREYHOUND RACING ASSOCIATION, a South Dakota Corporation, Employer's Tax ID No. 46–0222701, Debtor.**

**Bankruptcy No. 91–50224.**

United States Bankruptcy Court,
D. South Dakota, W.D.

March 25, 1993.

Haven L. Stuck and Donald R. Shultz, Rapid City, SD, for Lynn Jackson et al., Law Firm.

Charles L. Nail, Jr., Sioux Falls, SD, Asst. U.S. Trustee.

Dennis C. Whetzal, Rapid City, SD, Chapter Trustee.

Robert M. Nash, Rapid City, SD, for S.D. Cable, Inc.

## MEMORANDUM OF DECISION RE: FEE APPLICATIONS OF DEBTOR'S COUNSEL

IRVIN N. HOYT, Chief Judge.

The matters before the Court are the interim and final fee applications filed by Attorney Haven L. Stuck on behalf of Lynn, Jackson, Shultz & Lebrun, P.C., and the objections thereto filed by the United States Trustee, Chapter 7 Trustee Dennis C. Whetzal, and creditor South Dakota Cable, Inc. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2). This Memorandum and accompanying Order shall constitute findings and conclusions as required by F.R.Bankr.P. 7052.

### I.

Debtor Black Hills Greyhound Racing Association filed a Chapter 11 petition on July 8, 1991. Attorney Donald R. Shultz filed a Disclosure of Compensation on July 8, 1991 that stated,

Debtor has retained the law firm of Lynn, Jackson, Shultz & Lebrun, P.C. by payment of a $10,000.00 retainer. The following attorneys will be paid at the hourly rate of $125.00 per hour: Donald R. Schultz & Haven L. Stuck.

The Disclosure further stated Debtor was to be the source of compensation.

On August 14, 1991, Robert A. Michaels, Debtor's Vice President, filed an application to employ Lynn, Jackson, Shultz & Lebrun, P.C. ["Lynn, Jackson"]. The application stated the firm "is a disinterested party which does not hold or represent an interest adverse to the Debtor, its creditors, or any other party in interest with respect to the matters on which it is to be employed." The application to employ

Lynn, Jackson was accompanied by a Verified Statement by Law Firm signed by Attorney Stuck. It said:

> Lynn, Jackson, Shultz & Lebrun, P.C. is a disinterested party which does not hold or represent an interest adverse to the Debtor, its creditors, or any other party in interest with respect to the matters on which it is to be employed.

No objections to the application to employ were filed. By Order entered August 27, 1991, the Court approved Debtor's employment of Lynn, Jackson.

Because of this Court's encounter with an earlier Chapter 11 case in this District where a conflict of interest went unrecognized until after confirmation, the Court by letter dated August 27, 1991 recommended to Attorney Stuck that he review *In re Marolf Dakota Farms Cheese, Inc.*, Bankr. No. 89–50045, slip op. (Bankr.D.S.D. October 17, 1990). The Court's letter told Attorney Stuck that Debtor's application to employ his firm was approved but cautioned him that the firm should determine whether it has any relationship with "current shareholders, directors, or principal employees of Debtor" and, if so, disclose those relationships. The Court would then reassess the application to employ. An interim fee application filed by Attorney Stuck indicated he and his legal assistant had received and read the Court's August 27, 1991 Order and letter.

Debtor's schedules, filed on August 30, 1991, stated Debtor had paid Lynn, Jackson $3,158.20 within the preceding year. The purpose of this payment was not disclosed. Robert A. Michaels was listed as Debtor's secretary and treasurer and one of its five directors.[1] Debtor's schedule of personal property stated there were no liquidated debts owed to Debtor and no contingent or unliquidated claims held by Debtor.

On January 13, 1992, Debtor amended its schedule of personal property to include *inter alia* an account receivable for $789,-732.91 from Fidelity Investments, Inc. ["Fidelity"]. Debtor stated the claim arose from uncollected debts and insufficient fund checks. This amended schedule described Fidelity as a no-asset corporation.[2]

On February 11, 1992, Debtor filed its proposed Disclosure Statement and Plan. The Disclosure Statement listed Fidelity as one of Debtor's seven stockholders. The Disclosure Statement said recovery of the approximate $770,000.00 claim against Fidelity was "hopeless." The Plan contemplated a liquidation of Debtor with Lynn, Jackson acting as the liquidating and disbursing agent. The Plan had several attachments.[3] The third attachment was a financial report prepared by Debtor's prepetition accountant on February 20, 1991 from an audit on November 30, 1990. The report's STATEMENTS OF CASH FLOWS for the years ending November 30, 1990 and 1989 acknowledged several transfers between Debtor and its parent. The NOTES TO FINANCIAL STATEMENT said Fidelity owned 95.23% of Debtor and that Debtor and this parent filed a consolidated federal income tax return. Note 3 said:

> Advances to parent are shown as a reduction of stockholders' equity. During 1990, the advances were reduced by a net amount of $208,839 as a result of payments received from the parent. During 1989, the advances increased by $107,-993, which is net of the income tax allocation of $7,000 and dividends declared by [Debtor] of $31,950....

Note 5 said:

> [Debtor's] parent company entered into a contract in September, 1980, (in which

---

1. As noted above, Debtor's application to employ Lynn, Jackson was signed by Robert A. Michaels as Debtor's vice president. Debtor's schedules listed Dan Hartman and Art Helmich as Debtor's vice presidents and Robert A. Michaels as Debtor's secretary, treasurer, and director.

2. Rule 1009(a) of the Federal Rules of Bankruptcy Procedure requires notice of an amendment to a schedule or statement of financial

affairs to be served on all affected entities. Debtor only served notice of its January 13, 1992 amendment on the United States Trustee, rather than on all creditors and other parties in interest.

3. Six attachments were affixed to Debtor's Plan. The Plan did not refer to these attachments but Debtor's Disclosure Statement did.

[Debtor] was also a party to the contract), for the purchase of outstanding common stock of [Debtor]. The contract contains various restrictive covenants by [Debtor] for the term of the contract which expires in August, 1996, including the payment of dividends and certain net worth requirements.

The contract prohibits [Debtor] from paying any dividends; however, prior to liquidation of [Debtor] and within the limitations of the net worth requirements, [Debtor] may pay dividends to its parent company as shall be necessary to permit the parent company to make any payments due under the contract, or to repay any advances made to the parent company, for which the proceeds were used to make payments due under the contract. In addition, [Debtor] may also pay dividends to the minority stockholders' of [Debtor], within the limitations of the net worth requirements.

Finally, note 8 stated [emphasis added]: **The losses incurred during the year ended November 30, 1990 and cash advances made to the parent company in prior years to service debt incurred for the acquisition of [Debtor] have had a significant adverse impact on [Debtor] in terms of the availability of sufficient working capital to finance operations and to repay existing liabilities.** Management of [Debtor] is presently analyzing the financial position of [Debtor], economic conditions and future operations. Management of [Debtor] believes that the ability of [Debtor] to obtain a financing source or additional capital contributions by the parent company or other sources is a key component to continuing operations.

Attached to the financial report was another balance sheet for June 30, 1991 prepared by the same accountants. This balance sheet includes an account receivable against Fidelity for $777,678.08.

Except as stated in the Plan attachments, Debtor did not otherwise disclose or explain in its application to employ Lynn, Jackson, in its schedules and statements and amendments thereto, or within the body of its proposed Plan and Disclosure Statement that Fidelity was its parent company or that it had extensive financial dealings with Fidelity.

By Order entered April 9, 1992, the Court denied approval of Debtor's Disclosure Statement. Debtor's Chapter 11 case was converted to a Chapter 7 proceeding on May 20, 1992. Debtor's Motion to Dismiss, which was filed before the case was converted to a Chapter 7 proceeding, was denied by Order entered June 16, 1992.

Debtor filed its FINAL REPORT OF DEBTOR UPON CONVERSION FROM A CHAPTER 11 CASE TO A CHAPTER 7 CASE PURSUANT TO BANKRUPTCY RULE 1019 on June 15, 1992. The report stated Debtor had collected $269,948.13 and paid out $50,666.37 [4] during the Chapter 11. The report also said current receivables totaled $784,254.28, of which $770,000.00 was the account receivable from Fidelity.

Attorney Stuck filed an Application for Approval and Payment of Interim Debtor's Attorney Fees on June 24, 1992 and served notice of that application. The interim fee application sought $50,088.91 in compensation and reimbursement for services and costs incurred from June 28, 1991 through May 15, 1992. Objections to the interim fee application on several grounds were filed by South Dakota Cable, Inc., on July 21, 1992, Chapter 7 Trustee Dennis C. Whetzal on July 27, 1992, and the United States Trustee on July 29, 1992.

A telephonic status conference on the interim fee application and objections was held August 3, 1992. During the conference, the Court reviewed case law applicable to the pending fee application. In response, the parties agreed that the fee hearing should be continued to the September 1992 term of court so that Lynn, Jackson could file an amended application. By Order entered August 24, 1992, the hearing

---

**4.** Debtor's Chapter 11 receipts and disbursements were not itemized or described on the report.

on the interim fee application was continued to September 9, 1992.

Lynn, Jackson filed an amended itemized statement of fees and expenses on August 31, 1992. This amended itemized statement was not noticed for hearing nor was a last date for objections to the amended statement set.

With the consent of interested parties, the fee hearing set for September 9, 1992 was continued to the January 1993 term of court by an amended order entered October 15, 1992. The purpose of the second continuance was to allow objections to proofs of claim to be resolved before the interim fee application was fully addressed. In its motion to continue filed September 4, 1992, the United States Trustee also indicated a continuance was appropriate because the United States Trustee needed additional time to review the amended itemized statement and because a settlement was being discussed among interested parties.

Attorney Stuck filed and served notice of an Application for Approval and Payment of Final Debtor's Attorney Fees on December 3, 1992 for services rendered since conversion of the case to a Chapter 7, that is, from May 21, 1992 through November 18, 1992. Lynn, Jackson seeks $4,607.99 in additional compensation and reimbursement for total (interim and final) fees of $55,274.36.

The United States Trustee filed an objection to the final fee application on December 14, 1992. Trustee Whetzal joined the United States Trustee's objections on December 23, 1992.

On December 30, 1992, the United States Trustee filed a supplement to its objection to the interim fee application on the ground that "Applicant [Lynn, Jackson] has failed to disclose a disqualifying conflict of interest and in accordance with 11 U.S.C. § 328(c) the Application must be dismissed."

Attorney Stuck filed a response to some of the previous objections on January 4, 1993. He did not file a response to the United States Trustee's December 30, 1992 objection regarding the possible disqualifying conflict of interest.

An evidentiary hearing on the fee applications and objections thereto was held January 5, 1993. Appearances included Haven L. Stuck and Donald R. Shultz for Lynn, Jackson, Assistant U.S. Trustee Charles L. Nail, Jr., and Bruce J. Gering for the United States Trustee, Robert M. Nash for South Dakota Cable, Inc., and Chapter 7 Trustee Dennis C. Whetzal. By consensus of the parties, the hearing was limited to the objection that Lynn, Jackson had failed to disclose a disqualifying conflict of interest and, therefore, should be denied any compensation under 11 U.S.C. § 328(c).[5]

Testimony by Attorney Stuck and exhibits presented by the United States Trustee established that the $10,000.00 retainer paid to Lynn, Jackson was by a check written by Fidelity, not Debtor. Further, Lynn, Jackson's itemized billing statement attached to its final fee application was addressed to Fidelity, not Debtor. Attorney Stuck described Fidelity as "just a shell that tightly covered the shell of [Debtor]." He said Lynn, Jackson had represented Fidelity as recently as 1991 (the same year Debtor filed bankruptcy) in connection with "discussions" with the "Murphy Group," who owned Debtor prior to Fidelity's purchase of it. Stuck acknowledged that Lynn, Jackson's prior representation of Fidelity was not disclosed in his affidavit attached to the employment application. He also conceded the Disclosure of Compensation erroneously stated Debtor had paid the $10,000.00 retainer to Lynn, Jackson.

According to Attorney Stuck, he told Robert Michaels, an officer of both Fidelity and Debtor, that Lynn, Jackson would need

---

**5.** Of the several objections to Lynn, Jackson's interim and final fee applications, the remaining major issue not addressed at this hearing was whether Lynn, Jackson's services benefited the Chapter 11 estate or whether the case initially should have been filed as a Chapter 7 proceeding. The United States Trustee stated at the hearing that the information provided in Lynn, Jackson's amendment to its original interim fee application cured ninety percent of the entries that were deficient in description and justification.

a $10,000.00 retainer for its bankruptcy services for Debtor. Stuck said he did not then know that in response Michaels had issued the retainer check from a Fidelity account. Stuck also said that the check went into a Lynn, Jackson trust account without Stuck personally viewing it. Stuck acknowledged that Lynn, Jackson had received the retainer check from Fidelity before the firm prepared either its Disclosure of Compensation or the application to be employed by Debtor. He said he did not learn until sometime later that Fidelity had paid the retainer. Stuck argued that since Fidelity had paid the retainer, Debtor's creditors were directly benefited because Debtor had no liquid assets to pay a retainer and because it insured that at least $10,000.00 of Fidelity's $700,000.00 debt to Debtor was paid.

Attorney Stuck testified that he had concluded there was not a conflict of interest between Fidelity and Debtor that he needed to disclose. He relied on his personal investigation that showed him Debtor's $700,000.00 plus claim against Fidelity was uncollectible.

Joel DeVries, an accountant with McGladrey and Pullen, described Fidelity as Debtor's holding company. He presented a summary of some transactions between Debtor and Fidelity in 1990 and 1991 and Fidelity's financial picture during that time; an unaudited financial report compiled November 30, 1991; and Fidelity's federal income tax schedules L, M–1, and M–2 for the tax year ending November 30, 1991. The tax schedule indicated Fidelity lost money that tax year. DeVries testified that Fidelity had made an insurance payment for Debtor and also had paid a possible wage claim for Debtor a few months after Fidelity had paid the retainer to Lynn, Jackson when Debtor filed bankruptcy. He explained that a portion of the $700,000.00 plus that Debtor had given Fidelity was to pay Fidelity's debt for Debtor's purchase.

Dan Hartman, Debtor's former general manager,[6] testified that Debtor made interest payments and possibly some principal payments on Fidelity's debt for the purchase of Debtor. He said Fidelity paid some of Debtor's expenses during Debtor's last season of operation.

Hartman further testified that Debtor at one time owed First Bank of South Dakota approximately $150,000.00 on a one-year operating loan. The loan was guaranteed by principals of Fidelity. Hartman recalled that Debtor repaid the loan with funds provided by the guarantors and that the guarantors were then released. Hartman said that other debts that existed when the First Bank note was paid remained unpaid when Debtor filed bankruptcy.

At the conclusion of the hearing, the Court gave the United States Trustee and Lynn, Jackson the opportunity to file briefs by January 19, 1993. By letter dated January 8, 1993, the United States Trustee informed the Court that he would rely on the evidence and argument presented at the hearing. Lynn, Jackson did not file a brief. The matter was taken under advisement on January 20, 1993.

---

**6.** Debtor's motion to sell certain real and personal property contained a provision to pay a ten percent sales commission to Dan Hartman because of his efforts in finding a buyer. By objection filed February 26, 1992, creditor South Dakota Cable, Inc., argued against Hartman's commission because his employment by the estate had not been authorized. At a hearing held March 3, 1992, the Court approved the sales but held Hartman's commission would be determined later upon application to the Court. In response, Debtor filed an Application for Employment of Agent for Sale of Real Estate on March 18, 1992. The United States Trustee did not object. An Order was entered approving the employment of Hartman on March 27, 1992.

On March 31, 1992, South Dakota Cable filed a Motion to Reconsider and Vacate Order for Employment of Agent Dated March 27, 1992. South Dakota Cable stated Hartman's employment should not be approved because he was not a disinterested party. Further, South Dakota Cable argued that if Hartman was employed as a sales agent, that employment should not be retroactive to a time when he was still receiving compensation as Debtor's general manager. Debtor responded that Hartman had not been paid by Debtor since July of 1991. A hearing was held May 14, 1992. The employment Order was vacated by Order entered May 20, 1992.

## II.

*Employment of an attorney by a debtor.*

 A Chapter 11 debtor-in-possession may employ an attorney to represent or assist the debtor-in-possession in carrying out its duties if the attorney does not hold or represent an interest adverse to the estate. 11 U.S.C. §§ 327(a) and 1107(a). An adverse interest exists when two or more entities possess or assert mutually exclusive claims to the same economic interest. *In re National Distributors Warehouse Co., Inc.*, 148 B.R. 558, 560 (Bankr. E.D.Ark.1992) (citing *In re Hoffman*, 53 B.R. 564, 565–66 (Bankr.W.D.Ark.1985) (quote therein)). To represent an adverse interest includes serving as an attorney for an individual or entity holding such an adverse interest. *Id.* at 561.

 The attorney employed by the debtor-in-possession must also be a disinterested person. 11 U.S.C. § 327(a); *National Distributors Warehouse*, 148 B.R at 560; *Pierce v. Aetna Life Insurance Co. (In re Pierce)*, 809 F.2d 1356, 1362 (8th Cir.1987). A "disinterested person" is one who:

(A) is not a creditor, **an equity security holder, or an insider;**

. . . .

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor ...; and

(E) **does not have an interest materially adverse to the interest of the estate** or of any class of creditors or **equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor** ..., or **for any other reason.**

11 U.S.C. § 101(14) [emphasis added]. The latter "catch-all clause" is broad enough to exclude anyone with some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules. *In re BH & P Inc.*, 949 F.2d 1300, 1309 (3rd Cir.1991) (cites therein).

 An attorney seeking employment under § 327(a) is not disqualified solely because that attorney was previously employed by or represented a creditor. 11 U.S.C. § 327(c). If another creditor or the United States trustee objects on those grounds, "the court shall disapprove such employment if there is an actual conflict of interest." *Id.* Further, a person is not precluded from being an attorney for the debtor-in-possession solely because that person was employed by or represented the debtor before the bankruptcy was filed. 11 U.S.C. § 1107(b).

Under F.R.Bankr.P. 2014(a), an application by a debtor to employ an attorney shall state:

1. the specific facts showing the necessity of the employment;

2. the name of the person to be employed;

3. the reason for the selection;

4. the professional services to be rendered;

5. any proposed compensation arrangement; and

6. to the best of the applicant's knowledge, "**all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants**, the United States trustee, or any person employed in the office of the United States trustee [emphasis added]."

Rule 2014(a) also requires the employment application to be accompanied by "a verified statement of the person to be employed setting forth **the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants**, the United States trustee, or any person employed in the office of the United States trustee [emphasis added]."

 The purpose of this disclosure is to give the court the necessary information to determine whether the attorney is qualified to represent the debtor or whether more information is needed. *In re Rusty Jones, Inc.*, 134 B.R. 321, 345 (Bankr.N.D.Ill. 1991). Compliance with Rule 2014 protects the integrity of the bankruptcy process. *In re Diamond Mortgage Corp.*, 135 B.R. 78, 97 (Bankr.N.D.Ill.1990). The decision

about what information to disclose is not left to the attorney "whose judgment may be clouded by the benefits of the potential employment." *Rusty Jones, Inc.*, 134 B.R. at 345 (quoting *In re Lee*, 94 B.R. 172, 176 (Bankr.C.D.Cal.1988)); *Diamond Mortgage Corp.*, 135 B.R. at 97.

 If the attorney to be employed fails to disclose a relationship that presents a potential area of conflict, compensation to that attorney may later be denied. *Pierce*, 809 F.2d at 1363. An attorney who signs a statement under Rule 2014(a) that does not disclose potential conflicts of interest may also violate F.R.Bankr.P. 9011. *Id.* at 1363 n. 21.

*Compensation for and reimbursement of a debtor's attorney.*

 A debtor's attorney must file a disclosure of compensation regarding the fee arrangement for the bankruptcy services and the source of the compensation, even if compensation is not sought from the estate. 11 U.S.C. § 329(a). The disclosure of compensation should be supplemented if the attorney receives any payment not previously disclosed or if the attorney makes a new compensation agreement. F.R.Bankr.P. 2016(b).

If compensation is sought from the bankruptcy estate as an administrative expense under 11 U.S.C. § 503(b)(2), the Court may award to a debtor's attorney "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a). Interim compensation may be awarded under § 330 every 120 days or more often if the Court permits. 11 U.S.C. § 331. Federal Rule of Bankruptcy Procedure 2016(a) delineates the information a fee application under §§ 330 or 331 must include.

*Denial of compensation if the debtor's attorney is not disinterested or holds or represents an adverse interest.*

 Except as allowed by §§ 327(c) and 1107(b) as discussed above, a court may deny compensation and reimbursement to a debtor's attorney

if, at any time during such professional person's employment under section 327

or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (in pertinent part). This harsh sanction must be weighed against the realities of the case. *In re Marolf Dakota Farms Cheese, Inc.*, Bankr. No. 89–50045, slip op. at 6, 1990 WL 495459 (Bankr.D.S.D. October 17, 1990) (cite therein).

As previously noted by this Court in *Marolf Dakota Farms Cheese*,

[t]he court's supervisory role under § 327 is effective only if the applicant has made full disclosure of any 'connections with the debtor, creditors, or any other party in interest, their respective attorney and accountants' as required by Bankr.R. 2014(a). The court must then carefully consider any objections and enter appropriate findings. *See W.F. Dev. Corp. v. United States Trustee (In re W.F. Dev. Corp.)*, 905 F.2d 883, 884 (5th Cir.1990).

*Id.* at 4.

Simultaneous representation of a debtor corporation and its controlling shareholder by one attorney or firm and the actual or potential conflicts of interest that it creates is not a novel issue in bankruptcy. Generally, simultaneous representation is not a disqualifying conflict per se under 11 U.S.C. § 327(a) but the potentiality for disqualification in bankruptcy is very real. *Law Office of J.E. Losavio, Jr. v. Trustee and Creditors' Committee (In re Neidig Corp.)*, 113 B.R. 696 (D.Colo.1990); *In re Plaza Hotel Corp.*, 111 B.R. 882, 890 (Bankr. E.D.Ca.1990). The debtor-corporation needs to uncover and scrutinize all financial dealings by the owner carefully to insure that all avoidable preferences, fraudulent transfers, or claims for equitable subordination are exposed. *Plaza Hotel Corp.*, 111 B.R. at 890. If the owner has guaranteed corporate debt, an actual conflict exists because the corporation's and owner's interests are no longer identical even if the owner-guar-

antor waives any rights of subrogation or reimbursement. *Id.* at 890–91 and 890 n. 22. Moreover, the corporate debtor must maintain its status as the debtor-in-possession and fiduciary for creditors free of any compromising attitudes fostered by ownership interests. *Id.* at 890. An owner's and the debtor-corporation's consent to the simultaneous representation is ineffective because it is not an arm's length decision but is one made by the 'same person changing hats.' *Id.* at 890. Finally, the cost of separate representation is not a factor; the integrity of the bankruptcy process is paramount to the cost to the estate of engaging separate counsel. *Colorado National Bank v. Ginco, Inc. (In re Ginco, Inc.),* 105 B.R. 620, 622 (D.Colo.1988); *In re Lee,* 94 B.R. 172, 178 (Bankr.C.D.Ca.1989).

*Id.* at 4–5.

Since this Court's decision in *Marolf Dakota Farms Cheese,* several other courts have addressed similar conflict of interest questions. The majority conclude that a nondisinterested attorney cannot be employed by the debtor and a disqualified attorney may not be compensated from the estate.[7] Several have concluded that an attorney's failure to comply with the disclosure requirements of Rule 2014(a) by itself is enough to disqualify an attorney and deny compensation, even if no actual conflict of interest exists. *National Distributors Warehouse,* 148 B.R. at 562; *In re Tinley Plaza Associates, L.P.,* 142 B.R.

272, 278 (Bankr.N.D.Ill.1992); *In re Amdura Corp.,* 139 B.R. 963, 978 (Bankr.D.Colo. 1992) (cites therein); *In re EWC, Inc.,* 138 B.R. 276, 280 (Bankr.W.D.Okl.1992); and *In re Hathaway Ranch Partnership,* 116 B.R. 208, 220 (Bankr.C.D.Cal.1990).

## III.

*Disqualification of Lynn, Jackson as Debtor's attorney.*

■ Upon consideration of the requirements of § 327(a) and in light of the facts presented, the Court concludes that Lynn, Jackson was never qualified to represent Debtor in this case. First, Lynn, Jackson represented a party that holds an interest adverse to Debtor. Fidelity was Debtor's majority stockholder. Lynn, Jackson represented Fidelity in its "discussions" with the Murphy Group when Fidelity purchased Debtor. Lynn, Jackson's relationship with Fidelity continued until Debtor filed bankruptcy. Fidelity owed a large debt to Debtor. Fidelity and Debtor had entangled financial dealings surrounding Fidelity's debt for Debtor's acquisition based on the purchase agreement.[8] Fidelity paid some of Debtor's debts post-petition while pre-petition Debtor paid, at a minimum, the interest on Fidelity's debt for the purchase of Debtor. Finally, some evidence exists that the Chapter 11 Debtor-in-possession may have had (and now the Chapter 7 Trustee may have) a preference action involving Debtor's repayment of its $150,-

---

7. *See, e.g., In re Tinley Plaza Associates, L.P.,* 142 B.R. 272 (Bankr.N.D.Ill.1992) (compensation must be denied for services rendered when a conflict of interest exists; court has discretionary authority to disallow compensation for services rendered "outside" the conflict); *Agresti v. Rosenkranz (In re United Utensils Corp.),* 141 B.R. 306 (Bankr.W.D.Pa.1992) (corporate attorney who renders personal legal advice to individual shareholders or directors may create a conflict of interest; an evidentiary hearing is required to determine whether the attorney established an attorney-client relationship with the individuals); *In re Atlanta Sporting Club,* 137 B.R. 550 (Bankr.N.D.Ga.1991) (employment denied where law firm had represented several entities related to Chapter 11 debtors and where firm's disclosure statement and supplement did not disclose all the firm's connections with related entities or their principals); *In re Rusty Jones, Inc.,* 134 B.R. 321 (Bankr.N.D.Ill.1991)

(attorney's failure to disclose a conflict of interest which disqualifies him from representing the estate generally leads to a forfeiture of compensation from the estate, even if valuable services were rendered; court disallowed 60% of fees for failure to adequately disclose relevant connections); and *In re Hathaway Ranch Partnership,* 116 B.R. 208 (Bankr.C.D.Cal.1990) (law firm that represented a general partner in a limited partnership that was the debtor's general partner held an interest materially adverse to the debtor and could not be employed by the debtor's estate where mutual claims against the general partner and debtor existed and where the general partner had provided money for debtor's benefit).

8. The purchase agreement and related loan documents were not put in evidence.

000.00 operating loan with First Bank that was guaranteed by some principals of Fidelity. Based on these facts, Fidelity holds an interest adverse to Debtor. Since Lynn, Jackson represented Fidelity's interests in other financial matters involving Debtor, it may not represent Debtor in bankruptcy.

This is **not** a case where Lynn, Jackson formerly represented Debtor or a creditor of Debtor and where that prior representation may or may not result in disqualification depending on the nature of the prior representation and the equities of the case. 11 U.S.C. §§ 327(c) and 1107(b). Fidelity is Debtor's majority stockholder and it presently **owes** a large sum of money to Debtor.

■ Second, Lynn, Jackson is not a disinterested person because its retainer was paid by Fidelity. The check issued by Fidelity on Debtor's behalf is illustrative evidence of the two entities' muddled financial relationship and of Lynn, Jackson's prepetition relationship with Fidelity. Only an attorney with no employment or financial ties to Fidelity would possess the necessary objectivity and disinterestedness to fulfill his fiduciary duties for the benefit of Debtor's bankruptcy estate. *See National Distributors Warehouse*, 148 B.R. at 561–62; *Hathaway Ranch*, 116 B.R. at 219.

*Denial of compensation for Lynn, Jackson under § 328(c).*

■ As the Court held above, at no time during the bankruptcy case was Lynn, Jackson qualified under § 327(a) to be Debtor's attorney. Further, the firm completely failed to disclose its ties with Fidelity until the contested fee hearing on January 5, 1993. *Pierce*, 809 F.2d at 1363. Those facts, coupled with Attorney Stuck's indifference toward the Court's cautionary letter of August 27, 1991, lead the Court to conclude that all compensation for services and reimbursement of expenses under §§ 330 and 331 shall be denied.

■ The United States Trustee correctly noted that the decision of what information to disclose is not within the province of the attorney to be employed.

Attorney Stuck's judgment, even if it is the most well-founded judgment and the most adequately backed-up factually that could ever have been done by the most neutral of third-parties is inherently suspect because the person whose collectability he is assessing paid him his retainer and as part of the services rendered following his receipt of that retainer he determined the collectibility of the money owed by the entity that paid him the money.

Transcript of January 5, 1993 hearing at pp. 54–55; *Tinley Plaza*, 142 B.R. at 278. The purpose of the disclosure is to let the court and interested parties determine whether that attorney can fulfill the fiduciary obligation that is owed not only to the debtor but also to the entire estate, including creditors. *Wolf v. Weinstein*, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963) (cited in *United Utensils Corp.*, 141 B.R. at 309). The requirements of § 327(a) must be met "irrespective of the integrity of the person or firm under consideration." *National Distributors Warehouse*, 148 B.R. at 561; *see also In re Bonneville Pacific Corp.*, 147 B.R. 803, 805 (Bankr.D.Utah 1992); *Tinley Plaza*, 142 B.R. at 278. Here, no one but Attorney Stuck had the opportunity to consider whether Debtor could employ Lynn, Jackson under the requirements of § 327(a). *Compare In re Tiffany Square Associates, Ltd.*, 103 B.R. 337 (Bankr.N.D.Ga.1988) (where law firm fully disclosed its continuing representation of the debtor's parent corporation on unrelated matters and acknowledged parent would advance fees to the firm, the firm was allowed to continue as the debtor's counsel unless an actual conflict of interest was shown at which time fees would be disallowed under § 328(c)).

■ Lynn, Jackson could not rely on Debtor's schedules and statement of financial affairs, as amended, or Debtor's proposed plan and disclosure statement to serve as the firm's disclosure of possible conflicts of interest.

Neither the bankruptcy court or the trustee ... should have the awesome responsibility of combing through the often voluminous materials that are filed

with the court in order to ascertain every possible conflict of interest in a particular case, especially when a professional's potential conflicts are required to be disclosed in the application itself. *Pierce*, 809 F.2d at 1363 n. 20; *see also Tinley Plaza*, 142 B.R. at 278–79; *Rusty Jones, Inc.*, 134 B.R. at 345.

The penalty imposed on Lynn, Jackson is severe. The facts presented, however, permit no other result. Debtor and its parent shareholder Fidelity were not "mom and pop" corporations where a unity of interest and interdependence may have justified joint legal representation when only a potential conflict of interest existed. *See, e.g., In re Howell*, 148 B.R. 269 (Bankr. S.D.Tex.1992) (cases cited therein). While Lynn, Jackson described Fidelity as a tight shell on Debtor, that argument fails under the facts of the case. Only Debtor sought the protection of bankruptcy. If the entities were one and the same, their financial relationships would have been inextricable. Both would have filed petitions and then sought substantial consolidation of the estates. *See BH & P Inc.*, 949 F.2d at 1316–17 (factors to consider when joint representation of related debtors is proposed). As it is, the corporation that previously employed Lynn, Jackson, that paid Lynn, Jackson's retainer for Debtor's bankruptcy, and whose large debt to Debtor was not collected during Debtor's Chapter 11 proceeding, did not file bankruptcy.

Further, no fee award is appropriate in this case because Lynn, Jackson's lack of candor at the inception of the case about its prior representation of Fidelity precluded any opportunity the Court had to identify Lynn, Jackson's conflict and direct Debtor to employ another attorney. Lynn, Jackson was keenly aware of its relationship

with Fidelity before it filed a petition for Debtor. Nonetheless, the firm ignored the disclosure requirements of F.R.Bankr.P. 2014(a) and proceeded to represent Debtor despite the potential disgorgement of fees under § 328(c). *Compare In re M–H Group, Inc.*, 139 B.R. 836 (Bankr.N.D.Ohio 1991) (court awarded a disqualified law firm some fees on "quantum meruit theory" where the record did not reflect any reprehensible conduct by the firm and where the firm provided valuable legal services to the debtor); *Rusty Jones, Inc.*, 134 B.R. at 347 (40% of fees of a debtor's attorney with a conflict of interest allowed where services benefited the estate and confirmation was attained); *but see In re Grabill Corp.*, 983 F.2d 773, 777 (7th Cir. 1993).[9]

Finally, the Court cannot condone Lynn, Jackson's disregard for disclosure requirements that are the core of the process for employing estate professionals. *See* South Dakota Rules of Professional Conduct, S.D.C.L. Ch. 16–18, Rules 3.3 and 8.4 and Code of Conduct for United States Judges, Canon 3, B.(3). Honesty and candor must be forth coming from a debtor's counsel at this early stage of the bankruptcy process. In this case, however, the Court was left with no doubt that the firm would not have disclosed its ties to Fidelity but for the lack of disinterestedness objection by the United States Trustee. Lynn, Jackson's presentation of fragmented, unaudited financial reports on Fidelity was an ill-considered effort to justify its decision not to reveal the firm's ties with Fidelity. Moreover, the firm's legal arguments and Attorney Stuck's testimony at the hearing erroneously minimized the importance of complying with § 327(a) and Rule 2014(a).

---

**9.** Lynn, Jackson's failure to disclose its relationship with Fidelity is sufficient cause to deny all compensation. However, the record also shows that a primary goal of the Chapter 11 was to thwart a large state court default judgment taken against Debtor by South Dakota Cable, Inc., and that a sale of Debtor's real and personal assets may have been contemplated well before the reorganization petition was filed. In essence, the Debtor-in-possession's activity in the case and its proposed Chapter 11 plan and dis-

closure statement do not reveal any tangible effort to reorganize and operate again as a dog racing track. *See In re DN Associates*, 144 B.R. 195, 201–204 (Bankr.D.Me.1992) (review of case law on compensation awards based on results obtained). If the United States Trustee and other objectors would have had the opportunity to present evidence on whether this case was ever properly filed as a Chapter 11 proceeding, additional grounds for denying Lynn, Jackson its Chapter 11 fees may have been established.

An order will be entered denying Lynn, Jackson any compensation or reimbursement in this case. Pursuant to 11 U.S.C. §§ 328(c) and 329(b)(1)(A), Lynn, Jackson will be directed to turnover the retainer and any other compensation or reimbursement it received to Trustee Whetzal.