**In re NELCO LTD., Chapter 11 Debtor–In–Possession.**

**Bankruptcy No. 96–31500–T.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

April 10, 1997.

James K. Cluverius, Little, Parsley & Cluverius, P.C., Richmond, VA, for The Long Term Credit Bank of Japan, Ltd. and Creditanstalt Corporate Finance, Inc.

Miles Siegel, Simpson, Thacher & Bartlett, New York City, for The Long Term Credit Bank of Japan, Ltd.

Peter Feldman, Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Creditanstalt Corporate Finance, Inc.

Malcolm M. Mitchell, Jr., Murphy, McGettigan, Richards & West, Alexandria, VA, for CoreStates Bank, N.A.

Paul K. Campsen, Dennis T. Lewandowski, Kaufman & Canoles, P.C., Norfolk, VA, for Official Committee of Unsecured Creditors of Nelco Ltd.

Frank J. Santoro, Jane B. Wrightson, Marcus, Santoro & Kozak, P.C., Portsmouth, VA, for Nelco Ltd.

---

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

In this chapter 11 case, three bank creditors [1] and the unsecured creditors' committee filed separate motions to appoint a trustee. In the alternative the banks' motion requests the conversion of the case to a chapter 7.

Hearing on the motions was held on November 15, 1996, at which the court heard testimony and extensive argument. At the conclusion of the hearing the court stated that the evidence presented did not warrant the appointment of a trustee. The alternative motion to convert the case was taken under advisement.

For the reasons stated in this opinion the court will order this case converted to a case under chapter 7.

### Facts

Debtor Nelco Ltd. operated a successful computer leasing business until March 1996, when its management learned that a large number of Nelco's supposed leases were fraudulent and worthless.

The fraudulent leases, described throughout this bankruptcy case as the "stealth leases", represented in excess of $300,000,000.00 in lease financing debt, which had been funded by several banks. The fraud was perpetrated primarily by a former employee of the Philip Morris Companies, Edward J. Reiners. Both Nelco and the banks had believed the leases covered computer equipment used by a Philip Morris entity and that payment of the leases was an obligation of Philip Morris. As it turned out there were no computers, and there was no evidence before the Court that Philip Morris was involved.

With the collapse of a significant portion of its assets, Nelco filed this chapter 11 case on March 25, 1996. Nelco's principal and its counsel originally had hoped to salvage the company's business. However, it soon became apparent that Nelco would have to liquidate its remaining assets, comprised mostly of computer leases.

An unsecured creditors' committee has been a strong presence in this case as have the defrauded banks. From the outset, these banks, through counsel, have indicated some degree of distrust of Richard Nelson, based upon his prior association with the individual who committed the fraud. However, during several evidentiary hearings, including that on the instant motions, no evidence implicating Nelson in the fraud has been presented. Nelson himself has emphatically denied any involvement, pointing out that he and his company have also been victimized.

Another thread which has run throughout this case has been the specter of conflict between Nelson, the individual stockholder of Nelco, and Nelco itself. The nature of this conflict is described by this court in two opinions entered on August 13, 1996, and September 24, 1996, in which the court ruled that because of their conflicts between Nelson and Nelco, Nelson's personal attorneys could not serve as Nelco's special counsel in the chapter 11 case.

The instant motions for the appointment of a trustee (or conversion) are but another phase of the conflict between the banks and Richard Nelson, following the court's disqualification of Nelson's counsel from any Nelco representation. Thus, by the appointment of a trustee, movants seek finally to remove Nelson from any decision making position in the bankruptcy case.

In the administration of the chapter 11 case, Nelco and its bankruptcy counsel have forcefully and capably administered and liquidated Nelco's remaining leases and other assets. The creditors' committee and the banks cooperated with Nelco in the sale of its leases.

Outside the bankruptcy case, a forfeiture action is pending in United States District Court which involves the substantial sums recovered by the government from the perpetrators of the lease fraud. Among

---

1. Creditanstalt Corporate Finance, Inc., Long Term Credit Bank of Japan, Ltd., and CoreStates Bank, N.A.

those competing for these funds are the banks, Nelson and Nelco.

Although Nelco's assets have been substantially liquidated, its counsel has stated that a number of matters remain to be done in the administration of the case. These include:

(1) Analysis of the "dragnet" clause under which some of Nelco's creditor banks assert liens against all of Nelco's assets.

(2) Consideration of Nelco's exposure under "swap" indebtedness claimed by two banks.

(3) Consideration of recourse, nonrecourse issues.

(4) Close books, prepare tax returns.

(5) Conduct discovery.

(6) Prepare Plan of Reorganization.

(7) Pursue debtor's rights in the pending forfeiture proceeding.

(8) Investigate and, if appropriate, pursue any claim against Philip Morris or its affiliates which might arise out of the lease fraud transaction.[2]

*Conclusion of Law*

## APPOINTMENT OF TRUSTEE

The movants request the court to appoint a trustee for Nelco pursuant to 11 U.S.C. § 1104(a), which provides that "the court shall order the appointment of a trustee" in a chapter 11 case

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause ...; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, ....

11 U.S.C. § 1104(a).

At the conclusion of the hearing on the motions, I indicated from the bench that a trustee would not be appointed. The movants' evidence failed to prove "fraud,

dishonesty, incompetence, or gross mismanagement," and therefore appointment of a trustee under § 1104(a)(1) is not warranted. I decline to order the appointment of a trustee under § 1104(a)(2) because this would serve no better purpose than the conversion of the case to a chapter 7.

## CONVERSION

As an alternative to the appointment of a trustee the bank movants request the court to convert this case to a chapter 7 case pursuant to 11 U.S.C. § 1112(b), which provides that the court may convert a chapter 11 case to a chapter 7 case "for cause, including—(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; ...." 11 U.S.C. § 1112(b). The representative of the United States Trustee also recommends conversion.

As stated above, Nelco has liquidated its tangible assets. The evidence presented at hearing, including that of Nelco's officers, indicates that there is virtually no chance that this debtor can be rehabilitated. Moreover, although Nelco has potential claims that its counsel and management wish to pursue, collection efforts may be difficult and time consuming. Thus, the chapter 11 estate continues to incur administrative expense, including salaries and professional fees not only of Nelco but of the creditors' committee.

Since it is unlikely that Nelco can be rehabilitated, and the estate will likely suffer continuing loss and diminishment, at least in the near term, the court must consider whether conversion of the case is in the best interests of creditors.

One serious concern in the case, from the creditors' viewpoint, is the pursuit of any claims against Nelco's insiders. Nelco acknowledges that neither its management nor its counsel can pursue these claims. Nelco argues, however, that insider claims can and should be pursued by the creditors' committee.

Nelco's strongest argument that the case should not be converted is that present man-

---

2. The listed items are taken from Nelco's counsels' memorandum in support of a motion filed on August 23, 1996, requesting the court to clari-

fy or reconsider the disqualification of counsel order entered August 13, 1996.

agement is in the best position to pursue the company's claims in the forfeiture litigation and against Philip Morris. It is argued that a chapter 7 trustee would not have the financial resources to pursue these claims.

As stated by a member of the creditors' committee at the hearing, the creditors believe they will be better served by having a trustee who can make independent decisions in the case, such as whether to pursue insider claims.

■ I must conclude that conversion is the clear choice here, even though the debtor has performed well in the case, and there are concerns about the burden to be placed upon the incoming chapter 7 trustee. Under the Bankruptcy Code scheme, creditors will be better served at this stage of the case by a chapter 7 trustee.[3] Conversion may be expected to reduce administrative expenses, and the trustee's expenses will have a higher priority than those of the chapter 11 case.

Finally, and an important consideration, it is unreasonable to expect the creditors' committee to pursue insider claims in lieu of converting the case. A chapter 7 trustee will be in a better position to exercise independent judgment concerning the debtor's claims.

All findings of fact and conclusions of law contained in the Court's Memorandum Opinion entered with this Order are based solely on the evidence adduced at the November 15, 1996 hearing on the motions for appointment of a Chapter 11 Trustee and/or for conversion, and all such findings of fact and conclusions of law are *res judicata,* collateral estoppel and law of the case only with respect to such motions and not as to any other proceedings in this or any other case.

---

**3.** Although I agree with Nelco's counsel that his firm in many respects is in a better position to represent the interests of the bankruptcy estate than a newly appointed trustee, counsel's argument that his fees would continue to be funded in chapter 11 raises a concern. If the fees are to be funded by Nelson personally, counsel might have to confront the same type of conflict issue that previously led to the disqualification of Nelson's personal counsel. *See In re National Distribs. Warehouse Co.,* 148 B.R. 558, 561 (Bankr. E.D.Ark.1992); *In re TMA Assocs., Ltd.,* 129 B.R. 643, 648 (Bankr.D.Colo.1991); *In re Hathaway Ranch Partnership,* 116 B.R. 208, 219 (Bankr. C.D.Cal.1990).